Benjamin Wright, State Bar No. (027003)
Shawn A. McCabe, State Bar No. (032402)
Wright Law Offices
2999 N. 44th St., Ste. 600
Phoenix, AZ 85018
602-344-9695
480-717-3380 (fax)
shawn@azbklawyer.com
*Attorneys for Debtor*

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br><br>**DESERT VALLEY STEAM CARPET CLEANING, LLC**<br><br>Debtor. | Chapter 11<br><br>Case No. 2:20-bk-00570-BKM<br><br>**OBJECTION TO ATLAS RESIDENTIAL, LLC's PROOF OF CLAIM AND MOTION TO DETERMINE THE VALUE OF THEIR SECURED CLAIM** |

Debtor and debtor-in-possession, Desert Valley Steam Carpet Cleaning, LLC ("Debtor"), by and through undersigned counsel, hereby files it *Objection to Atlas Residential, LLC's ("Atlas") Proof of Claim and Motion to Determine the Amount of Their Secured Claim* ("Motion"). In addition to lodging their objection to Atlas' Proof of Claim 3-4 ("POC-3-4"), Debtor seeks the entry of an order pursuant to Rule 3012(a) setting the amount of Atlas' secured claim to the maximum amount specified in the Deed of Trust ($275,000.00). This Motion is supported by the entire record in this proceeding and the following Memorandum.

# MEMORANDUM

## I. FACTS

1. Debtor owns the real property located at 603 North D Street, Eloy, Arizona 85131 (the "Property"). The Property was a thirteen-unit apartment complex comprised of two buildings, one building with five (5) rental units and one building with eight (8) rental units.

2. The Property secures a Deed of Trust (the "Deed of Trust"), recorded on or about February 27, 2015, between Debtor and Kansas State Bank. The very first provision of the Deed of Trust states, "MAXIMUM LIEN. The lien of this Deed of Trust shall not exceed at any one time $275,000.00." Deed of Trust attached as **Exhibit 1** at pg. 5

3. Pursuant to the Deed of Trust, "If Lender elects to apply the proceeds to restoration and repair, **Trustor** shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust." *Id.* (emphasis added).

4. The Deed of Trust further states "Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property *shall be used first to pay amount owing to the principle balance of the Indebtedness.*" *Id.* (emphasis added).

5. The Deed of Trust does not make provision for Lender to restore or repair the Property itself from insurance proceeds.

6. Atlas purchased the Deed of Trust from the original creditor on or about May 3, 2017.

7. On or about March 17, 2017, a fire occurred at the Property, severely damaging the five (5) unit building on the Property. State Farm paid insurance proceeds related to the fire in the total amount of approximately $168,025.82 (the "First Insurance Proceeds")

8. On or about July 19, 2018, while the Property was in the sole possession and control of Atlas, a roof collapse occurred at the Property. The collapse was caused by the demolition activities authorized by Atlas, commenced without city permits, and was performed by an unlicensed contractor.

9. Atlas currently has collected a grand total of approximately $284,872.88 ("Insurance Proceeds") in insurance proceeds related to the fire and Collapse.

10. The date that was 180 days after Atlas's receipt of the First Insurance Proceeds was January 11, 2018, at which time the undisbursed and uncommitted portion of the Fire Insurance Proceeds should have been applied to the Promissory Note balance in accordance with the express terms of the Deed of Trust. To date, none of the insurance proceeds have been paid toward the Deed of Trust.

11. On or about May 22, 2018, the Bankruptcy Court in the Ch. 7 Proceeding permitted Atlas to use / apply the insurance proceeds as proscribed by the deed of trust and applicable state law [*see* Order – Dkt. No. 63 in Ch. 7 Proceeding].

12. On or about June 24, 2018, Atlas used the May 22, 2018 Bankruptcy Court Order as authorization to take possession of the Property and use the insurance monies to "restore" the Property. Based on Atlas' false representations about the effect the May 22, 2018 order, the Eloy police department gave Atlas' unlicensed contractors access to the Property to commence work over Debtor's and Mr. Granado's protests

13. On or about July 13, 2018, the City of Eloy issued Atlas a Stop Work Notice advising that Atlas was to "Stop all work. A building permit will need to be approved." The negative implication of which was that Atlas' work was completed without obtaining a building permit.

14. On or about July 19, 2018, while the Property was in the sole possession and control of Atlas, a roof collapse ("Roof Collapse") occurred at the Property caused by the unpermitted demolition activities authorized by Atlas.

15. On or about July 25, 2018, the Bankruptcy court clarified the order which specifically stated that "[t]he Court granted the Atlas's motion but did not otherwise determine any rights under the Deed of Trust or grant Atlas any additional rights. Atlas's rights in the Property and the proceeds continue to be governed by the terms of the loan documents and state law." [*Id*. at Dkt. No. 69 at 2].

16. On August 24, 2018, State Farm provided Victor with an expert report ("Expert Report") which stated "the roof was supported by the interior bearing walls" and that "contractor did not take the necessary steps to shore up the roof structure during the renovation process, and as a result, the roof collapsed and the masonry walls on the north and south sides of the building either collapsed or were structurally damaged beyond repair."

17. State Farm covered losses associated with the roof collapse, and on or about September 5, 2018 issued a check to Atlas for such insurance proceeds totaling $98,509.29.

18. While in possession, Atlas has allegedly spent $178,625.50 on improvements ("Improvements") to the property which it has characterized as "Repairs."

19. On October 26, 2018, Atlas transmitted to Debtor by email a document entitled: (a) Notice of Election to Restore and Repair / Notice of Commitment of Insurance Proceed ("Notice"); and (b) a copy of a contract between Defendant (as coordinator) and Atlas General, LLC ("Atlas General")(as contractor)("Unauthorized Construction Contract").

20. The sole member of Atlas Residential is Atlas Capital, LLC ("Atlas Capital"). Further, Atlas Capital is the sole member of Atlas General.

21. In the Notice, Atlas Residential admitted that it "contracted" with Antonio Faver Londono to do the non-permitted required repairs.[2] According to the State Court's prior order, Atlas

provided a ledger of expenditures ("Expense Ledger") made from the Fire Insurance Proceeds dated September 5, 2018. According to the Expense Ledger, Atlas paid the unlicensed Mr. Londono the sum of $28,250.00 for demolition (two (2) payments of $10,500.00 each) and reframing ($7,250.00) pursuant to Invoice Nos. 1162 and 1163.

22. Atlas has engaged in hiring unlicensed contractors, failed to obtain permits and allowed such unlicensed contractors to proceed to negligently perform unauthorized restorations, repairs and upgrades to the Property.

23. Despite numerous orders from the state court to apply the insurance proceeds in accordance with the Deed of Trust, Atlas has failed to do so. Such failure has improperly inflated the amounts owing to Atlas and permitted Atlas to justify accruing default interest on the loan for literally years.

24. On or about June 17, 2020, Jamie Granado commissioned a Multi-Family Inspection Report ("Inspection Report") for the Property. *See Debtors Objection Application for Compensation and Reimbursement of Expenses for Custodian*, at Dkt. No. 119, Exhibit A.

25. On or about April 27, 2020, this Court ordered Atlas to turnover control of the Property to Debtor together with any and all rents, tenant security deposits and the remainder of the Insurance Proceeds [Dkt. No. 69].

26. Debtors have sequestered approximately $236,525.66 of the Insurance Proceeds turned over by Atlas in a separate DIP account.

27. According to Atlas' POC 3-4, the staggering outstanding balance on the loan as of December 31, 2019 (because Atlas has refused to apply the insurance proceeds and has spent nearly is $178,625.50 in capital expenditures, which it has categorized as "repairs") is $602,747.70.

28. On or about May 29, 2020, Atlas filed its First Application for Compensation and Reimbursement of Expenses for Custodian [Dkt. No. 89]. On or about June 9, 2020, Atlas

filed its Second Application for Compensation and Reimbursement of Expenses for Custodian [Dkt. No. 101]. On or about July 17, 2020, Atlas filed the Application to amend its prior applications [Dkt. No. 115]. Collectively referred to herein as the "Application."

## II. LEGAL ARGUMENT

Atlas comes to this Court with unclean hands, seeking reimbursement from the Debtor for Atlas' numerous breaches of the Deed of Trust and Arizona law. Debtor objects to Atlas POC 3-4 in its entirety.

### A. Debtor Objects to Atlas Secured Cliam

#### i. Atlas' Allowed Secured Claim is Capped in the Deed of Trust.

Debtor objects to Atlas' allegation that a secured claim for $433,122.88 exists. Pursuant to Bankruptcy Rule 3012, Debtor hereby requests this Court determine the amount of Atlas' secured claim. Atlas contends their collateral consists of three (3) things – the Property, the Rents, and the Insurance Proceeds. However, its claim is capped pursuant to the maximum lien language in the Deed of Trust.

#### 1. The Property

The Deed of Trust evidences in plain language that a Maximum Lien exists. Debtor argues that its language expressly limits the security interest in the Property to $275,000.00. Atlas references this in the Addendum to POC 3-4 and disputes Debtor's assertion without, explanation, reason, or authority.

However, the original Deed of Trust was drafted by and agreed to by Kansas State Bank. Evidence of their intent that the maximum lien amount limited the Deed of Trust can be found in Kansas state law. KS Stat §58-2336, states "That the lien of such mortgage shall *not exceed at any one time the maximum amount stated in the mortgage*." (emphasis added). This law, was the reason the maximum lien language was included in the Deed of Trust. The original drafter understood that the Deed of Trust could only secure up to $275,000.00 at any one time. Atlas stepped into the

shoes of Kansas State Bank and is subject that understanding and agreement. They cannot now change the terms of the Deed of Trust because they prefer not to agree. Debtor requests this Court make a formal determination that the maximum security interest against the Property is $275,000.00.

## 2. The Rents

Atlas has attempted to assert that the Assignment of Rents somehow "secures" all of the remaining amounts allegedly owing to Atlas beyond the maximum lien under the Deed of Trust. However, the Assignment of Rents was not absolute as previously ruled by this Court.[1] As such, the Assignment of Rents is a remedy in the event that Debtor defaulted under the promissory note ("**Note**") or the Deed of Trust. The Assignment of Rents does not exist in a vacuum, rather they are a derivative of the Deed of Trust.

If the amounts due under the Deed of Trust are paid to Atlas (which cannot exceed $275,000), the Property is unencumbered and can be sold to a third party. If the Property were to convey, the Assignment of Rents would be void as Debtor would no longer be collecting rents as they would no longer be in privity of contract with the tenants (given that the tenants would be in contract with the party to which the Property conveyed). Given the foregoing, the maximum lien in the Deed of Trust must, by operation of logic, control. Atlas has a bifurcated claim under Bankruptcy Code §506, that is comprised of a secured claim against the Property (up to $275,000), and an unsecured claim for whatever balance exceeds the maximum lien, if any.

Since the Property was turned over to Debtor, they have been making timely adequate protection payments. Debtor argues that they are current for purposes of the Assignment and Rents and Atlas is not subject to any security interest in on-going collected Rents.

Finally, Atlas has not provided adequate accounting of the Rents it had collected while in

---

[1] The Court previously noted that Atlas' rights under the Assignment of Rents was triggered by a default by Debtor under the Note or Deed of Trust.

Page **7** of **15**

possession of the property. Atlas asserts that it applied the rents it collected to interest (Application at 9, fn6). However, as laid out in more detail below, Debtor disputes the interest amount Atlas alleges it is owed. Atlas claim for interest, whether secured or unsecured, must be determined after a proper accounting of the Rents Atlas collected.

### 3. The Insurance Proceeds

Debtor objects to Atlas having a security interest in the Insurance Proceeds that is separate, above, or beyond, the maximum lien amount. The Insurance Proceeds should have been applied to pay down the Deed of Trust years ago. However, since Atlas purchased the promissory note and Deed of Trust, they have been searching for ways to keep the entirety of the Insurance Proceeds, while also keeping the maximum lien amount at $275,000.00. Atlas has persistently refused to follow the plain language of the Deed of Trust

The Deed of Trust controls the application of the Insurance Proceeds, not Atlas. The Deed of Trust expressly states that the Insurance Proceeds should have already been applied towards the balance on the Deed of Trust. Atlas' options were to either 1.) allow Debtor to repair the property and then reimburse them upon satisfactory completion; or 2.) Apply the funds towards the balance owed on the Deed of Trust.

Atlas cannot dispute the fact Property has never been repaired by the Debtor and there was never a formal agreement for them to. Moreover, Atlas had not entered into any contracts to repair the property in the 180 days after the funds were paid out. There are absolutely no provisions in the Deed of Trust which can be construed to allow Atlas to spend in the Insurance Proceeds themselves on their own repair of the Property. However, that is exactly what Atlas' position is and why the Insurance Proceeds are still in cash form. Atlas has persisted in their argument and attempts to use these funds to pay themselves or their own sub-entity for repair of the Property. Atlas has even defied the Pinal Court Superior Court order that Insurance Proceeds be paid toward the Deed of Trust in accordance with its terms.

As the Property has not been repaired and Atlas and Debtor did no come to an agreement in 180 days after the funds were paid, there is but one option under the Deed of Trust: the Insurance Proceeds must be applied to the balance owed on the Deed of Trust. However, Atlas flat out refuses to do this. Atlas' attempts of keeping the Insurance Proceeds to pay off their alleged unsecured claims is simply not supported by the Deed of Trust or previous court orders.

Any funds owed beyond the $275,000.00 maximum lien are simply an unsecured claim. Atlas is not entitled to secure their unsecured claim with the Insurance Proceeds. The only interest that Atlas has in the Insurance Proceeds is that they *first* be applied to the balance owed on the Deed of Trust. This interest derives from the Deed of Trust

**B. Debtor Objects to any Unsecured Claim**

Atlas is not entitled to an unsecured claim over and above what the Deed of Trust secures. Atlas has breached the terms of the Deed of Trust and failed to tender accurate payoff statements in violation of A.R.S. § 33-715(F), resulting in an inflated principle balance, excessive interest, and unnecessary attorney's fees.

Atlas has systematically refused to apply the Insurance Proceeds to the balance due and thereby breached the plain langue of the Deed of Trust. This issue has been litigated in the Pinal County Superior Court. That court ordered that the Deed of Trust's plain language be strictly adhered to and that Atlas was to apply the Insurance Proceeds as specifically state: first to the balance owed under the Deed of Trust. Atlas nonetheless refused to do so.

In refusing to apply any insurance proceeds to the balance under the Deed of Trust, Atlas provided several false payoff statements in connection with Debtor's previous attempts to the sell the Property. This is in direct violation of Arizona law and the sole reason that sale was not completed. Atlas is not entitled to claim a default interest rate, penalties, and attorneys fees, when the continuing default and litigation is a result of Atlas breach of the Deed of Trust and Arizona law.

Page **9** of **15**

Case 2:20-bk-00570-BKM    Doc 176    Filed 12/09/20    Entered 12/09/20 16:07:33    Desc
Main Document    Page 9 of 15

**C. Debtor Objects in Full to Atlas' Claim for Administrative Expenses**

**i. Atlas was Never a Custodian**

Atlas is not entitled to compensation of administrative expenses under Bankruptcy Code §503(b)(3)(E). Debtor disputes Atlas' contention that they were ever a custodian of the Property. The Bankruptcy Code defines "custodian:"

> The term "custodian" means—
> (A) receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title;
>
> (B) assignee under a general assignment for the benefit of the debtor's creditors; or
>
> (C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors.

11. U.S.C. §101(11).

Atlas was never appointed or employed as a custodian in this case or by any other court. Atlas was never assigned the Property under a general assignment. Atlas was never assigned the Property as a trustee, receiver or agent. Rather, Atlas took possession of the Property by force. By misrepresenting the extent of Judge Gan's May 22nd, 2018, order they were able to convince local police to allow the access to the property over the objection of Debtor and its principals.

In Atlas' Motion to Authorize Use of the Insurance Proceeds, their prayer for relief simply asked, "to proceed with applying the Insurance Proceeds in accordance with the terms of its Deed of Trust." This is what Judge Gan granted in May 22nd Order and what was explicitly stated in his July 24, 2018 clarification of the May 22nd ruling. The Bankruptcy Court never litigated or entered orders on whether the Deed of Trust allowed Atlas to repair the Property itself or even enter the Property.

Atlas was not in possession of the property for the benefit of creditors or the bankruptcy

estate. Rather, Atlas possessed the property and expended funds solely for its own benefit, as it thought it would soon own title to the Property. Since they were never a custodian of the Property, Atlas is not entitled to reimbursement of expenses under Bankruptcy Code §503(b)(3)(E).

### ii. Atlas' Administrative Claim is Defective

Atlas' expenditures are subject to a heightened standard of *actual* and *necessary*. Specifically, the court in *In re Montemurro* stated "If and to the extent the compensation requested of the custodian is to be paid from estate property, the heightened standard of actual and necessary as set forth in section 503(b)(3)(E) should be applied. *In re Montemurro*, 581 B.R. 565, 575–76 (Bankr. N.D. Ill. 2018)(Court described custodian's application as "a data dump with no guidance whatsoever for the court to follow in determining whether asserted items meet the applicable standards" and required that application at issue to be revised).

Before Atlas can have an approved Administrative claim, they must "specifically address how the applicable standards of that section have been met for each of the items contained in the Application." Montemurro, 581 B.R. at 579. Atlas' POC 3-4 contains no specific information and simply references Atlas' Application. The problem is, the Application is essentially a data dump which contains no analysis of how the expenditure of $247,544.45 meets the standard of actual and necessary.

The Administrative claim must be denied as it fails to inform the Court, the Debtor and the creditors what Atlas spent money on, whether said expenses were actually paid, much less how such expenditure was necessary. Unless and until they do so, Atlas' Administrative claim is not entitled to consideration. Atlas' excuse that the "supporting documentation for those expenditures is voluminous" does not relieve them from providing the documentation for review by the Court, the Debtor, United States Trustee's Office and the other creditors, particularly when they seek an administrative claim for nearly $250,000. Debtor reserves the right to specifically address and object to Atlas' line-item expenditures should they ever present argument as to how each item was

reasonable and necessary.

### iii. Atlas' Expenditures were Unreasonable and Unnecessary

In addition to the deficiencies described above, the Property still requires significant work. Atlas has asserted that the Property needed roof repairs (Application at 9, Lines 7-9), electrical work (id., Lines 13-15), plumbing repairs (id., Lines 21-22), fire and smoke alarms (Id. at 10, Lines 1-2), HVAC repairs (id.), cabinets and countertops (id., Lines 3-4). Debtor fails to understand how this described scope of work costs in excess of $200,000. Regardless, after such expenditure, one would expect the Property to be in pristine condition. However, Debtor was shocked when it received possession again as much of the Property still requires significant work (see e.g. Inspection Report regarding Units 4 and 8).

### iv. Any Administrative Claim is Subject to Surcharge

Should this Court make a determination that Atlas was ever a "custodian" under the Bankruptcy Code, Debtor will surcharge Atlas under Bankruptcy Code §543(c)(3). Atlas' Administrative claim must be offset by this.

While in possession of the Property Atlas has: (1) engaged in self-dealing by seeking to, or actually employing Atlas General, LLC as its contractor; (2) utilized unlicensed parties in violation of A.R.S. § 32-1151; (3) failed to obtain required permits to undertake construction activities; (4) caused significant damage to the Property which harmed Debtor by diminution in the Property's fair market value; (5) significantly reduced the revenues that would have been generated by the Property; and (6) spent excessive funds to upgrade the Property, as if they were the owners. Debtor reserve their right to more fully set for their grounds and specific reasons for surcharge should a motion become necessary.

### v. Atlas can NOT be Reimbursed for Improvements and Upgrades

As discussed above, Atlas was not a court appointed custodian or receiver. Rather, they were a mortgagee-in-possession of the Property. As a general rule, where the mortgagee takes

Page **12** of **15**

possession of realty without a foreclosure, he cannot charge for more than keeping the property in repair and is not entitled to any reimbursement for permanent improvements which he installs. *Caro v. Wollenberg*, 83 Or. 311, 318, 163 P. 94, 97 (1917). A contrary holding under such circumstances would mean that at his discretion a mortgagee can put improvements upon real estate to such an extent as to render it impossible for the mortgagor to redeem. *Id.*

Atlas' expenditures went far above and beyond simply keeping the property in repair. Atlas sought to use the Insurance Proceeds to upgrade and improve the Property and then foreclose and take possession. Atlas did everything it could to frustrate Debtor's efforts to either re-finance or sell the Property (refusing to provide an accurate payoff statement that reflected the remaining unspent balance of Insurance Proceeds), burying Debtor in the loan balance so it could never redeem the Property and driving up the default interest that accrued on the loan.

### vi. The Loan Documents do NOT Provide for Management Fees

As discussed above, Atlas is not a court appointed receiver and thus the relationship between the parties is governed by the loan documents. Atlas' Administrative Claim contains reimbursement for management and accounting fees. There is no basis in the Promissory Note or Deed of Trust which would allow Atlas to collect a fee for managing the Property. Atlas has utterly failed to provide any basis to support their alleged entitlement to management fees. As there is no basis for it, the Court must deny Atlas' claim for management and accounting services

### D. Atlas is NOT Entitled to Indemnification for Their Negligence

While in possession to the Property, Atlas hired admittedly unlicensed contractors to work without permits, causing a roof collapse and condemnation of a portion of the Property. Atlas has significantly damaged the Property and is being sued by Debtor's former insurer (State Farm) for State Farm's initial claim payout on that damage. Atlas now seeks to include costs and the judgment that will likely be entered against them as a claim against Debtor in this case. Debtor objects in the strongest possible terms to this. Debtor is in no way responsible for Atlas' intentional

Page **13** of **15**

Case 2:20-bk-00570-BKM    Doc 176    Filed 12/09/20    Entered 12/09/20 16:07:33    Desc
Main Document    Page 13 of 15

negligence and they provide no reason or argument as to why Debtor should be. Any damages State Farm is awarded against Atlas in that action are Atlas' burden to bear, not Debtor's.

### III. CONCLUSION

In conclusion, Debtor fully objects to Atlas POC 3-4. Debtor request this Court to set an evidentiary hearing to determine the value of Atlas secured claim as it pertains to the Property.

**RESPECTFULLY SUBMITTED** this 9th day of December, 2020

**Wright Law Offices, PLC**

By: /s/ *Shawn A. McCabe* (#032402)
Shawn A. McCabe
*Attorneys for Debtor*

E-FILED this  9th day of December, 2020 with
the U.S. Bankruptcy Court and copies
served via ECF notice on the following
parties that have appeared in the case.

**COPY** of the foregoing served
via email to:

Office of U.S. Trustee
230 North First Ave., Suite 204
Phoenix, AZ 85003-1706
Email: ustpregion14.px.ecf@usdoj.gov
Email: Patty.Chan@usdoj.gov

Cynthia L. Johnson
Law Offices of Cynthia L. Johnson
11640 East Caron Street
Scottsdale, AZ 85259
Cynthia@jsk-law.com
*Attorneys for Alfonso Larriva*

Christopher Dylla
Office of the Attorney General
2005 North Central Avenue
Phoenix, AZ 85004-1592
Christopher.dylla@azag.gov
*Attorneys for Arizona Department of Revenue*

Patrick R. Barrowclough
Atkinson, Hamill & Barrowclough, P.C.
3550 N. Central Avenue, Suite 1150

Phoenix, AZ 85012
pbarrowclough@ahblawfirm.com
*Attorneys for Atlas Residential, LLC*

By: */s/ Rebecca Casteel*