Patrick R. Barrowclough (No. 010150)
ATKINSON, HAMILL & BARROWCLOUGH, P.C.
3550 N. Central Avenue, Suite 1150
Phoenix, AZ 85012
Telephone: (602) 222-4828
Fax: (602) 222-4820
E-mail: pbarrowclough@ahblawfirm.com

Cynthia L. Johnson (No. 014492)
LAW OFFICE OF CYNTHIA L. JOHNSON
11640 E. Caron Street
Scottsdale, AZ 85259
Telephone: (480) 381-7929
Fax: (480) 614-9414
E-mail: cynthia@jsk-law.com

Attorneys for Atlas Residential, LLC

UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>DESERT VALLEY STEAM CARPET CLEANING, LLC,<br><br>Debtor. | Chapter 11 Proceedings<br><br>Case No. 2:20-bk-00570-BKM<br><br>**ATLAS RESIDENTIAL'S RESPONSE TO DEBTOR'S (I) AMENDED OBJECTION TO ATLAS'S PROOF OF CLAIM 3-4 AND (II) OBJECTION TO ALTAS'S PROOF OF CLAIM 7-1 AND REQUEST FOR EVIDENTIARY HEARING** |

Debtor's Amended Objection to Atlas Residential, LLC's Proof of Claim 3-4 and Objection to Proof of Claim 7-1 (Dkt. 211 - "**Objection**") should be denied, and Atlas's claims should be allowed as set out in its Proof of Claim 7-1. Atlas is entitled to an allowed secured claim and an allowed priority administrative claim (and an unsecured claim to the extent any portion of its claim is not allowed as a secured or administrative claim) as more particularly set out in its Proof of Claim. This response is supported by the

following Memorandum of Point and Authorities and the entire record in this case.

## MEMORANDUM OF POINT AND AUTHORITIES

**I.  Debtor's initial claim objection, related pending proceedings, and request for evidentiary hearing.**

As noted in the Objection, Debtor initially filed an objection to Atlas's Claim 3-4 on December 9, 2020 (Dkt. 176); that earlier objection has now been amended and replaced by the current Objection and Atlas does not believe any response to that earlier superseded objection is required.  That said, to the extent necessary this response shall also be deemed to be in response to that earlier objection.

As to Debtor's current Objection, Atlas disagrees with many of the purported "facts" Debtor has set out in Section I, including, without limitation, Debtor's interpretation of prior orders of the court in the first bankruptcy case ("**First Bankruptcy**") and in the Arizona Superior Court, as well as its alleged "facts" concerning the insurance proceeds and the parties' rights, responsibilities and requirements regarding those proceeds.  Instead of listing all of Atlas's objections and disagreements one-by-one, Atlas will address the main discrepancies in context below or when necessary in later pleadings or at the evidentiary hearing(s) to be held on various matters.  Additionally, some of the various facts were addressed in prior pleadings filed in this matter.  *See, e.g.,* Atlas's Amended First and Second Application for Compensation and Reimbursement of Expenses of Custodian (Dkt. 115 – "**Custodian Application**").

In that regard, the overwhelming majority of the arguments and objections raised in Debtor's Objection relate to claims in the pending adversary proceeding 2:20-AP-00093 between Debtor, Victor Granado ("**Victor**") and Jamie Granado ("**Jamie**") on the one side, and Atlas on the other (the "**Adversary Proceeding**"), and/or in the pending proceedings concerning Atlas's Custodian Application.  The court previously established a discovery/briefing/hearing schedule in both the Adversary Proceeding and on the

Custodian Application, and as such all those arguments in Debtor's Objection can and should be addressed and considered as part of those proceedings. *See* Case Management Order (Adv. Dkt. 18) and Order Extending Case Management Deadlines (Adv. Dkt. 30) (collectively "**Adversary Scheduling Orders**"), and Order Establishing Briefing, Discovery and Hearing Schedule for Atlas's Custodian Application (Dkt. 178 – "**Custodian Application Scheduling Order**") (hereafter the Adversary Scheduling Orders and the Custodian Scheduling Order shall sometimes be referred to collectively as the "**Scheduling Orders**").

As with the claims in the Adversary Proceeding and the claim set out in the Custodian Application, Atlas submits that an evidentiary hearing will be needed on the extent and amount of Atlas's secured claim (and correspondingly its unsecured claim), and on Atlas's Judgment Lien claim (discussed in Section II(F) below). As such, Atlas requests that the court enter an order setting a discovery, briefing and Section 506(a) hearing schedule re Atlas's secured loan claim in this case and a similar schedule on the Judgment Lien claim.[1]

**II.     The court should allow Atlas's claim in its entirety**.

For the court's convenience, in this Section II of its response Atlas will address the subsections in Section II of Debtor's Objection in the same order they are presented in the Objection.

    **A.     Atlas's Proof of Claim 7-1 amends Proof of Claim 3-4.**

On July 31, 2020 Atlas filed an amended proof of claim ("**POC 3-4**") setting out its claims in this matter which included a secured claim, a priority administrative claim, and, to the extent any portion of its claim was not secured or priority, an unsecured claim.

---

[1] In relation to the Judgment Lien claim, and as discussed in Section II(F) below, that hearing must be scheduled as part of an adversary proceeding unless the parties and the court agree otherwise.

Thereafter, on November 5, 2020 Atlas filed a Motion for Leave to Amend Proof of Claim (Dkt. 150 – "**Motion to Amend Claim**") seeking to amend POC 3-4 to add a claim based on a judgment lien ("**Judgment Lien**") encumbering a portion of the Property in which Debtor claims an interest, and on December 18 the court entered its Order granting Atlas's Motion to Amend Claim (Dkt. 184). Pursuant to that Order, on December 22 Atlas filed an amended proof of claim which included that Judgment Lien claim; unfortunately, instead of docketing that new proof of claim as an amendment to the previously filed POC 3-4, the claim was docketed as a separate proof of claim, Claim 7-1 in the Claims Register (hereafter "**POC 7-1**"). Despite it being docketed as a separate claim, however, Atlas is not seeking recovery under both POC 7-1 and POC 3-4 because POC 7-1 sets out Atlas's entire claim, including what was previously set out in POC 3-4. As such, and to the extent necessary, Atlas will agree to withdraw POC 3-4 and proceed only on POC 7-1.

**B.     Atlas's secured loan claim exceeds $275,000[2].**

Atlas holds a claim evidenced by a Promissory Note ("**Note**") that is secured both by the Deed of Trust and by the separate Assignment of Rents (the Note, Deed of Trust and Assignment of Rents are attached as Exhibits A to C to POC 7-1). As set out in POC 7-1, the amount of Atlas claims under those documents ("**Loan Documents**") and in relation to the Custodian Application as of the date of this bankruptcy filing is not less than $643,235, and some or potentially all of that claim is secured by the Property, the rents and any other proceeds or income derived from that Property ("**Rents**"), and the insurance proceeds Debtor is currently holding and any future insurance proceeds paid to Debtor in this case ("**Insurance Proceeds**").

---

[2] This Section II(B) is focused solely on the loan claim held by Atlas. In addition to that loan claim, Atlas holds a secured claim arising from the Judgment Lien as set out in POC 7-1 and that portion of Atlas's secured claim is discussed in more detail in Section II(F) below.

**(1) The Property and Deed of Trust lien**.

As Debtor admits, Atlas has a secured claim in the Property under the Deed of Trust in an amount up to $275,000. The extent of that secured claim has not yet been determined by the court, and Atlas submits that the amount of its claim secured by the Property may be greater than $275,000, depending on (i) the value of the Property, and (ii) whether there is a limit on the amount of the lien imposed by the Deed of Trust as Debtor is arguing. As to the first issue, Atlas submits the value of the Property is far greater than the $249,000 that Debtor has previously alleged. In any event, the court set an evidentiary hearing on value for June 1, 2021 (Dkt. 219). As to the second issue, discovery in this matter is on-going, and the meaning of the language in the Deed of Trust is still being investigated. For instance, Atlas has served a subpoena on KS State Bank seeking information and documents that may shed some light on this issue, and if necessary Atlas intends to conduct further discovery on this issue by way of depositions and/or Rule 2004 examinations.

That said, Debtor's argument that a Kansas statute provides "evidence" of the Bank's intent concerning language in the Deed of Trust is misguided, to say the least. Kansas law is irrelevant because the Deed of Trust, as well as the rest of the Loan Documents, are all governed by Arizona law. *See, e.g.,* Deed of Trust, Exhibit A to POC 7-1, which provides [emphasis in the original]:

> **Governing Law. This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Arizona without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of Arizona.**

As such, KS Stat § 58-2336 *et seq*. has no bearing whatsoever on this case. It was not "the reason the maximum lien language was included in the Deed of Trust," and it does not support Debtor's baseless contention that "the original drafter understood the Deed of

Trust could only secure up to $275,000." In the end, Debtor has no evidence to support those arguments.

At some point the court will need to make a determination under § 506(a) and value Atlas's interest in Debtor's interest in the Property, which will involve resolving several outstanding issues, including: (i) the Property value; (ii) whether the Deed of Trust lien is limited by language therein; (iii) whether Debtor owns all of the Property (including Lots 2 and 4), and (iv) several other issues that have been raised in the Adversary Proceeding. One or more evidentiary hearings will be needed on the various issues, and, again, the first such hearing (on value) is scheduled for June 1.

**(2) The Rents.**

In addition to the Deed of Trust, Atlas also holds a separate, perfected, Assignment of Rents that was executed by Debtor and recorded in Pinal County which constitutes a separate, fully enforceable, contract on its own terms. Like the Deed of Trust, that Assignment secures the amounts owed to Atlas, but it is separate and apart from that Deed of Trust and gives Atlas additional remedies and rights as to the Rents. As such, even if the court were to find that the Deed of Trust contains a limit as to the maximum lien imposed by that Deed of Trust, that limitation does not apply to Atlas's interest in the Rents themselves under its Assignment of Rents.

Debtor incorrectly asserts the rights granted in the Assignment of Rents are "derivative of the Deed of Trust," but Debtor is wrong and has no authority to support its contention. For instance, even if the Deed of Trust was released, the Assignment of Rents would stand alone as a perfected real property lien in full force and effect and would still secure Atlas's claim under its Promissory Note. The Assignment of Rents itself is an interest in the real Property, separate and apart from the Deed of Trust. *See In re Scottsdale Medical Pavilion*, 159 B.R. 295, 302 (B.A.P. 9th Cir. 1993) ("Under Arizona

law, assignments of rent for security are treated as interests in real property."). Debtor is attempting to make the separate Assignment of Rents a meaningless agreement, and that was obviously not the intent of the parties, otherwise it would not exist.

Under the Assignment of Rents Atlas has an interest in all Rents derived from the Property. Per the cash collateral order entered in this case (Dkt. 85) Debtor may use some of the Property income for its monthly expenses, provided it makes certain adequate protection payments to Atlas. In addition to the Rents needed to pay the monthly expenses and adequate protection payments, however, Debtor has accrued excess Rents of $14,500 as of February 28, 2021 (Dkt. 218 – Debtor's Monthly Operating Report for February 2021). Those Rents constitute additional collateral for Atlas under its Assignment of Rents, as will all additional excess Rents Debtor collects during this case. *See In re Paradise Springs Associates*, 165 B.R. 913, 926 (Bankr. D. Ariz. 1993).

Additionally, there is value to the future income stream that must be accounted for if Debtor ever gets to plan confirmation and if that plan calls for Debtor to retain the Property. The amount of that value also secures Atlas's claim in this case and said amount will need to be calculated as of the effective date of a confirmed plan in this case. Atlas recognizes that in general the value of a future income stream is included when determining the value of income producing property. That said, however, if Atlas's Deed of Trust lien in the Property is limited to $275,000 as Debtor argues, then that generality does not apply to this case, because the total value of the Property's future rent stream will not be included as part of that limited $275,000 lien. Instead, it will need to be separately accounted for and separately valued because it is part of the security under Atlas's separate and distinct Assignment of Rents.

In its Objection Debtor glosses over (or totally ignores) the importance of the separately recorded Assignment of Rents, and instead argues – without support and not for

Case 2:20-bk-00570-BKM    Doc 224    Filed 04/01/21    Entered 04/01/21 16:09:16    Desc
Main Document    Page 7 of 18

the first time in this case – that Atlas has not provided an adequate accounting, here directed specifically to an "accounting of the Rents." Atlas disagrees. It provided substantial accounting information and documentation as part of the Arizona Superior Court proceedings, it filed an accounting in this bankruptcy case on April 27, 2020 when it turned over the Property to Debtor, and subsequently filed an amended accounting to supplement and correct certain items in that April 27 accounting (*See* Dkt. 82 and Dkt. 118 respectively). It also provided additional accounting information as part of its Custodian Application (showing, among other things, Rents collected while Atlas was in possession of the Property), as part of POC 7-1, and it has provided Debtor with additional accounting information as part of the disclosure process in this case and in the Adversary Proceeding.

Although Debtor states it "disputes" the amount of interest Atlas is owed, it is not enough to simply disagree with Atlas's detailed calculations. Debtor has failed to discuss in any detail exactly how its "dispute" affects the amounts Atlas has claimed for interest, and Debtor has failed to provide its own calculations regarding interest. In objecting to POC 7-1 it is Debtor's burden to "come forward with sufficient evidence and 'show facts tending to defeat the claim by probative force equal to that of the allegations of'" Altas's POC 7-1. *See In re Lundell,* 223 F.3d 1035, 1039 (9th Cir. 2000). Debtor has failed to do so here, and, again, simply complaining that Atlas has failed to provide enough accounting information or that it "disputes" the interest calculations is insufficient. Without that information and/or calculations from Debtor it is difficult (if not impossible) to address Debtor's "dispute," and Atlas reserves the right to more specifically address Debtor's concerns and arguments if and when Debtor ever supplies such additional information/calculations.

…

…

**(3)  The Insurance Proceeds**.

Under the terms of its Loan Documents Atlas has a secured claim in the Insurance Proceeds.  In fact, Debtor acknowledges Atlas has a security interest in the Insurance Proceeds, except to the extent that interest is "separate, above or beyond the maximum lien amount" which Debtor asserts is $275,000 – *see* Objection, p. 10, lns. 14-15.  Debtor then argues, however, that Atlas should have previously applied those Insurance Proceeds towards the balance on the Deed of Trust, and in not doing so Atlas has ignored orders by the Superior Court requiring it to take such actions.

Debtor raised those same arguments and is pursuing its same claims related thereto against Atlas as part of the Adversary Proceeding and the Custodian Application proceedings. The issues will be fully litigated as part of those proceedings and need not be resolved here.  Suffice it to say that Atlas disagrees with Debtor's allegations, including Debtor's purported "facts" and arguments set out in the Objection regarding the Insurance Proceeds; Atlas has complied with the language in the Deed of Trust, and it has not violated any Bankruptcy Court orders or Superior Court orders.  Atlas timely disbursed Insurance Proceeds or committed to use such Insurance Proceeds to the extent it was required to do so under any Court orders, and/or under the Loan Documents and applicable law.

Debtor erroneously states Atlas had only two options under the Deed of Trust (*i.e.,* allow Debtor to repair the Property and then reimburse it after the repairs were completed, or apply the Insurance Proceeds to the balance of the Deed of Trust) but Debtor is wrong. Debtor itself discusses a third option which was acknowledged by the Superior Court, that being that Atlas may move forward to repair the Property or enter in a contract to repair the Property in the relevant time period.  In fact, Atlas did so, both by attending to certain repairs and by entering into a contract for the repairs with Atlas General, LLC in

September 2018.[3]

In any event, all of the issues concerning the Insurance Proceeds will be resolved as part of the Adversary Proceeding and Custodian Application proceedings, and in line with the Scheduling Orders that have been entered.

### C. If any portion of Atlas's claim is not secured and not a priority administrative claim, then Atlas holds a valid unsecured claim.

As discussed in POC 7-1, to the extent any portion of Atlas's claim is not an allowed secured claim or an allowed administrative claim, then it is a valid unsecured claim. Debtor argues Atlas is not entitled to an allowed unsecured claim because it breached the Deed of Trust and Arizona law in several respects, including by refusing to apply the Insurance Proceeds as required, failing to tender accurate payoff statements when Debtor was attempting to sell the Property, and inflating the amounts owed under the Loan Documents.

Debtor is wrong on all counts. As noted above, Atlas has not failed or refused to apply the Insurance Proceeds in violation of the Loan Documents or applicable law and did not breach the Deed of Trust. In fact, it was Debtor who materially breached the Deed of Trust and related Loan Documents, by, among other things, failing to make the monthly payment on the Note when due on March 1, 2017, and all payments due thereafter; Debtor repeatedly fails to take responsibility for its refusal to make the loan payments and corresponding loan default. Moreover, although Debtor mentions "previous attempts to sell the Property," it provides no details (or even dates) regarding such "previous attempts." That said, Atlas was asked to supply payoff information for two alleged sale attempts in July and August 2017, and Atlas provided that information. Unquestionably,

---

[3] In the Objection Debtor characterizes that contract as "unauthorized" but fails to support that characterization. *See* Objection, ¶29. In any event, Atlas disagrees with Debtor's characterization of the contract, and disagrees with Debtor's purported facts in that paragraph 29, as well many of the purported "facts" and the arguments set out by Debtor in Section I(d) of the Objection (paragraphs 26-34).

Atlas was not required to apply the Insurance Proceeds at that point in time, and moreover, it is Atlas's understanding there were numerous reasons the sale(s) did not go forward. At this point, Debtor has not provided anything but generalities regarding the failed attempted sales, and discovery regarding those attempted sales is ongoing.

There are numerous legal and factual disputes that need to be resolved regarding the allowability and amount of Atlas's claims, including its unsecured claim. As noted, issues concerning the Insurance Proceeds are scheduled to be heard as part of the Adversary Proceeding. Moreover, issues concerning the payoff statements and the alleged sale attempts are also part of that Adversary Proceeding and will be heard in due course in that Proceeding.

### D. Atlas holds a valid priority administrative expense claim.

Atlas's administrative expense claim is discussed in POC 7-1, and more fully set out and supported in Atlas's Custodian Application, and that Custodian Application and all of its arguments and exhibits is incorporated into this Response as though fully set out herein or attached hereto.

In Section II(D) of its Objection Debtor objected to that administrative claim in its entirety, arguing (i) Atlas was not a "custodian," and (ii) the expenses were not "actual" and "necessary", (iii) the claim itself is defective, (iv) the claim is subject to surcharge, and (v) Atlas cannot be reimbursed for improvements and upgrades, and (vi) Atlas is not entitled to management fees. Debtor is wrong across the board. Moreover, all issues raised in this portion of Debtor's Objection are part of the proceedings taking place in regard to the Custodian Application, and, as noted, the court has already set a hearing, briefing and discovery schedule for those matters in its Custodian Application Scheduling Order. Currently investigation and discovery are ongoing in relation to the Custodian Application.

That said, Atlas notes the following regarding Sections II(D)(i-vi) in Debtor's Objection:

1. The arguments set out in Section II(D)(i)(1-3) of Debtor's Objection are virtually identical to those set out in Debtor's March 1, 2021 Response to Atlas's Motion for Order That it was Acting as a Custodian (Dkt. 205) and Debtor's Supplement thereto (Dkt. 213). Atlas addressed all of those arguments in detail in its March 23, 2021 Reply In Support of Motion for Order That it was Acting as a Custodian (Dkt. 222), and Atlas incorporates that Reply and the arguments set out therein as though they were set out herein in their entirety.

2. The arguments set out in Section II(D)(ii-vi) were previously set out as part of Debtor's Objection to Atlas's Custodian Application (Dkt. 119). Atlas addressed all those arguments in its Reply in Support of its Custodian Application (Dkt. 149), and Atlas incorporates that Reply and the arguments set out therein as though they were set out herein in their entirety. As discussed in that Reply, all of the costs and expenses incurred by Atlas while it was acting as custodian of the Property were reasonable and necessary[4]; performed in accordance with Arizona law; and benefited the Property and, in turn, the bankruptcy estate in this case.

Again, all of the issues and objections Debtor has now raised (or raised again) in objecting to Atlas's administrative claim portion of POC 7-1 were raised in conjunction with, and should be heard and decided as part of, the Custodian Application proceedings.

---

[4] Although Atlas submits all the costs and expenses were necessary, § 543 only requires that such costs and expenses were "reasonable," and Atlas submits that "reasonableness" standard is applicable to its requests for fees, costs and expenses incurred while it was acting as custodian.

### E. Atlas's additional claim re Insurance Proceeds.

POC 7-1 includes an additional claim in relation to the Insurance Proceeds to the extent that Atlas may hold a third-party claim against Debtor in relation to a portion of those Insurance Proceeds that are the subject of a lawsuit filed by State Farm against Atlas. Upon information and belief, State Farm is seeking a return of a portion of the Insurance Proceeds in that lawsuit. As set out in POC 7-1, to the extent State Farm is entitled to a return of a portion of the Insurance Proceeds, then Atlas is asserting and reserving a claim for those Insurance Proceeds which are in Debtor's possession such that they would need to be returned or re-paid to State Farm.

Despite Debtor's argument in the Objection, Atlas is not claiming Debtor is strictly responsible for any damages Atlas may suffer in the lawsuit; it is simply preserving a claim as to the Insurance Proceeds to the extent the Arizona Superior Court orders the return of those Insurance Proceeds.

### F. Atlas holds a valid Judgment Lien claim.

As set out in POC 7-1, Atlas also holds an interest in Lots 2 and 4 of the Property pursuant to its Judgment Lien against those Lots in an amount exceeding $80,000. Debtor argues the Judgment Lien did not attach because those Lots were not owned by Victor when the Judgment was recorded[5]. Debtor then argues Atlas has not provided any "reasoning or legal analysis" as to why the alleged "transfer" from Victor to the Victor L. Granado Irrevocable Trust (the "**Irrevocable Trust**") was ineffective. Once again, Debtor is wrong, and in Atlas's Motion to Amend Claim and in Atlas's reply in support of that Motion (Dkt. 174 – "**Reply re Motion to Amend**") Atlas explained in detail why the purported transfer was not effective and offered support for that position, and both that

---

[5] Debtor actually states the Property was not in Victor's name when the judgment was "entered," but the relevant date is when the judgment was recorded on January 20, 2007.

Motion and the Reply are incorporated herein.

Among other things, and as discussed in those pleadings (i) the trustee's sale guarantee ("**TSG**") issued June 27, 2017 (after the alleged transfer to the Irrevocable Trust) states that as of that date title to the Property was vested in Desert Valley "as to Lots 1 and 3 and Victor L. Granado as to Lots 2 and 4"; (ii) that TSG lists the Judgment Lien as encumbering the Property; (iii) the Irrevocable Trust agreement attached to the Quit Claim Deed from Juanita Granado[6] that Debtor relies on to argue Victor transferred title of Lots 2 and 4 to the Irrevocable Trust was not effective to transfer property because, among other things, it appears Victor's signature – the alleged grantor in the document – is not notarized and is ineffective (*see* A.R.S. § 33-401), and the Irrevocable Trust agreement was "made" on November 16, 2016 when Victor did not own any interest in Lots 2 and 4; and (iv) for numerous reasons (discussed in the Reply re Motion to Amend) it is unclear if there even is an effective Irrevocable Trust in existence, and if there is no Irrevocable Trust then Debtor's argument that Lots 2 and 4 were transferred to that Trust fail (*see* Reply re Motion to Amend, pgs. 4-6). Further, and even ignoring all of the foregoing, simply attaching the Trust agreement to Juanita's Quit Claim Deed was not effective to transfer an interest in the real property.

Atlas is in the process of conducting discovery on various matters concerning these issues. For instance, Atlas has recently obtained documents from Title Security Agency related to two escrows Debtor opened regarding possible sales of the Property in mid-2017 (presumably the "attempted sales" Debtor was referring to in its Objection), and, like the TSG, those documents show that Victor owned Lots 2 and 4 at and after the time the Judgment Lien was recorded. *See* May 8, 2017 Commitment for Title Insurance issued by First American Title Insurance Company in Escrow 600-90365-JS; *see also* July 19, 2017

---
[6] Exhibit 3 to the Motion to Amend.

Commitment for Title Insurance issued by Old Republic Title Insurance Company in Escrow 600-95307-TS (copies of the Commitments are attached hereto as Exhibits A and B, respectively). Further, Schedule B(1) of both Commitments requires the recording of a "satisfaction" of the Judgment Lien to clear title to the Property.

As it did in its objection to Atlas's Motion to Amend Claim, in its current Objection Debtor argues that Atlas is attempting to improperly use the filing of a proof of claim to establish its Judgment Lien claim, and that it is required to file an adversary proceeding under Bankruptcy Rule 7001(2). Debtor is mistaken and misconstrues the application of Rule 7001.

Atlas has properly asserted its Judgment Lien claim as part of POC 7-1, and properly supported that claim in the POC Addendum and with the Exhibits attached thereto. As such, that claim is deemed to "constitute prima facie evidence of the validity and amount of the claim." Bankruptcy Rule 3001(f). As noted earlier, it is then incumbent on Debtor to overcome that presumption of validity with evidence of equal probative force, and Debtor has failed to do so in its Objection. Moreover, because Debtor is attempting to attack the validity, priority, or extent of a lien or other interest in property, it is *Debtor* that is required to bring an adversary proceeding to do so:

> (b) DEMAND FOR RELIEF REQUIRING AN ADVERSARY PROCEEDING. A party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding.

Bankruptcy Rule 3007(b); *see also In re Commercial Western Finance Corp.*, 761 F.2d 1329, 1336-1338 (9th Cir. 1985); *In re Colortran*, 218 B.R. 507, 501-511 (B.A.P. 9th Cir. 1997) [7].

---

[7] Although Debtor is generally required to file an adversary proceeding, in order to save the parties from incurring unnecessary fees and expenses, and provided the court's scheduling order on the Judgement Lien claim includes sufficient safeguards to protect Atlas's due process rights, Atlas will agree to proceed on the

Debtor's final argument is that to prevail on its Judgment Lien claim Atlas would have to avoid a prior transfer of the Property, presumably referring to the purported transfer of Lots 2 and 4 into the Irrevocable Trust, and that Atlas is precluded from doing so under the applicable fraudulent conveyance statutes of limitations.  Again, at this point Atlas is not arguing the prior transfers are void and constitute fraudulent conveyances, it is arguing Victor owned (and perhaps still owns) Lots 2 and 4 and did so when the Judgment was recorded such that the Judgment Lien attached to those Lots.  Perhaps after discovery it will become apparent certain transfers were improper, or that various transfers constituted fraudulent conveyances and should be invalidated.  If so, then those issues, (and whether any such avoidance actions are time-barred), can be analyzed and litigated if and when they arise.  At this point, however, the evidence shows there was no valid conveyance of Lots 2 and 4 to the Irrevocable Trust, and the Judgment Lien claim is valid.

Finally, at the conclusion of the Objection (p. 22, lns 16-25) Debtor argues Mr. Larriva has been involved in litigation in numerous cases, and further asserts that he "is known to twist the facts in anyway [sic] necessary to support his position" and then mentions a case in which Mr. Larriva was involved several years ago.  Debtor's assertions regarding Mr. Larriva are both unsupported and entirely irrelevant to the case at bar, and at best it appears Debtor is simply trying to paint Mr. Larriva in a negative light hoping the court will lean in favor of the Debtor.  At worst, it appears the assertions are being used to harass Mr. Larriva and/or to unnecessarily increase the costs of litigation in this case.  Either way, such gamesmanship should not be tolerated by this court.  That said, if the court deems Debtor's allegations as relevant in anyway, Atlas reserves the right to respond

---

Judgment Lien claim in the context of a contested matter, or to have the contested matter on the Judgment Lien claim "converted" to an adversary proceeding.

in detail to the allegations when and if it becomes necessary.

## CONCLUSION

For all the reasons set out herein, Atlas requests that the Debtor's Objection be denied, or that the various objections and issues set out in the Objection be decided as part of (as applicable) the Adversary Proceeding, the Custodian Application proceedings, the valuation proceedings (including 506(a) proceedings which have not yet been set), or otherwise at proceedings on the Judgment Lien claim. Further, Atlas requests that the court set a discovery/briefing/hearing schedule on the Judgment Lien claim either in the context of an adversary proceeding to be filed by Debtor, or in the context of a contested matter if the parties and court agree to move forward on that claim as a contested matter.

RESPECTFULLY SUBMITTED this 1st day of April, 2021.

                                              ATKINSON, HAMILL & BARROWCLOUGH, P.C.

                                              By   */s/ Patrick R. Barrowclough*
                                                   Patrick R. Barrowclough
                                                   3550 N. Central Avenue, Suite 1150
                                                 Phoenix, AZ 85012

                                                 Cynthia L. Johnson
                                                 LAW OFFICE OF CYNTHIA L. JOHNSON
                                                 11640 E. Caron Street
                                                 Scottsdale, AZ 85259

                                                 Attorneys for Atlas Residential, LLC

COPY served via e-mail or electronic
notification this 1st day of April, 2021 to:

Benjamin Wright
Shawn A. McCabe
Wright Law Offices
2999 N. 44th Street, Suite 600
Phoenix, AZ 85018
E-mail: bwright@wloaz.com
         shawn@azbklawyer.com
Attorneys for Debtor

| | |
|---|---|
| 1 | Patty Chan<br>Office of the U.S. Trustee |
| 2 | 230 N. First Ave., Suite 204<br>Phoenix, AZ 85003 |
| 3 | E-mail: patty.chan@usdoj.gov<br>Attorneys for U.S. Trustee |
| 4 | |
| | */s/ Heather Widmann* |
| 5 | |