Benjamin Wright, State Bar No. (027003)
Shawn A. McCabe, State Bar No. (032402)
**Wright Law Offices**
2999 N. 44th St., Ste. 600
Phoenix, AZ 85018
602-344-9695
480-717-3380 (fax)
shawn@azbklawyer.com
Attorneys for Debtor

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

In re

**DESERT VALLEY STEAM
CARPET CLEANING, LLC**

Debtor.

Chapter 11

Case No. 2:20-bk-00570-BKM

**DEBTOR'S THIRD AMENDED
DISCLOSURE STATEMENT**

## I.     INTRODUCTION

This document is the disclosure statement of the debtor, Desert Valley Steam Carpet Cleaning, LLC ("**Debtor**" or "**DVSCC**"), in the above entitled Chapter 11 bankruptcy proceeding. This Third Amended Disclosure Statement is submitted by the Debtor pursuant to 11 U.S.C. §1125 (the "**Disclosure Statement**").

11 U.S.C. §1125(b) prohibits the solicitation of acceptances or rejections of a plan of reorganization unless such plan is accompanied by a copy of the Disclosure Statement which has been approved by the Bankruptcy Court.

The purpose of this Disclosure Statement is to provide creditors and interested parties in this bankruptcy proceeding with such information as may reasonably be deemed sufficient to allow creditors and interested parties to make an informed decision regarding

the Debtors' Joint Plan of Reorganization ("**Plan**"), a copy of which is attached hereto and incorporated herein as **"Exhibit A"**.

Unless otherwise noted, those portions of the Plan and this Disclosure Statement providing factual information concerning the Debtor, their assets and liabilities, have been prepared from information submitted by the Debtor and their retained professionals. The Debtor and other professionals employed by the Debtor have utilized all relevant, non-privileged information provided by the Debtor in preparing this Disclosure Statement and the Plan.

This Disclosure Statement contains information that may influence your decision to accept or reject the Debtor's proposed Plan. Please read this document with care.

The financial information contained in this Disclosure Statement has not been subjected to an audit by an independent certified public accountant. For that reason, the Debtor is not able to warrant or represent that the information contained in this Disclosure Statement is without any inaccuracy. To the extent practicable, the information has been prepared from the Debtor's financial books and records and great effort has been made to ensure that all such information is fairly representative.

This Disclosure Statement and the Plan will classify all creditors into Classes. The treatment of each Class of creditors will be set forth in this Disclosure Statement and in the Plan. You should carefully examine the treatment of the Class to which your Claim will be assigned.

This Disclosure Statement requires approval by the Bankruptcy Court after notice and a hearing pursuant to 11 U.S.C. §1125(b). Once approved, the Disclosure Statement

DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT

will be distributed with the Debtor's proposed Plan for voting. Approval of the Disclosure Statement by the Bankruptcy Court does not constitute either certification or approval of the Debtor's Plan by the Bankruptcy Court or that the Disclosure Statement is without any inaccuracy.

The Bankruptcy Court will confirm the Plan if the requirements of Section 1129 of the Bankruptcy Code are satisfied. The Bankruptcy Court must determine whether the Plan has been accepted by each impaired class entitled to vote on the Plan. Impaired classes entitled to vote on the Plan are those classes of claims whose legal, equitable or contractual rights are altered, as defined under §1124 of the Bankruptcy Code. An impaired class of claims is deemed to have accepted the Plan if at least two thirds in amount of those claims who vote and more than one half in number of those claims who vote have accepted the Plan. An impaired class of interests is deemed to have accepted the Plan if the Plan has been accepted by at least two thirds in amount of the allowed interests who vote on the Plan.

Even if each class of creditors does not accept the Plan, the Plan can be confirmed under §1129(b) of the Code, so long as one impaired class of creditors accepts the Plan. This is referred to as the "cram down" provision. The failure of each class to accept the Plan could very well result in a conversion of this case to a Chapter 7 or dismissal of the Chapter 11, and the secured creditors repossessing its collateral and disposing of it in a commercially reasonable manner with no obligation to unsecured creditors.

Only the votes of those creditors or interested parties whose ballots are timely received will be counted in determining whether a class has accepted the Plan.

## II.    DEFINITIONS

The definitions set forth in Article I of the Plan apply in this Disclosure Statement except to the extent other definitions are set forth in this Disclosure Statement.

## III.    THE DEBTORS AND EVENTS PRECIPITATING THE CHAPTER 11

DVSCC was formed on or about August 12, 2005, for the purpose of owning and operating a multi-family housing property located at 603 and 607 North D Street, Eloy, Arizona 85131 (the "**Property**"). The Property is comprised of 4 lots: Lots 1-4. DVSCC's is comprised of two member/managers: Jamie Granado and Victor Granado (the "**Principals**").

Atlas Residential, LLC ("**Atlas**") claim liens on the Property pursuant to a deed of trust ("**Deed of Trust**") recorded with the Pinal County Recorder's Office ("**Recorder's Office**") at Rec. Do. No. Rec. Doc. 2015-013815 and attached as **"Exhibit B"**. Atlas also claims an interest in the revenue (rents) generated by the operation of Debtor is its "cash collateral" as defined in 11 U.S.C. §363 pursuant to an assignment of rents ("**Assignment of Rents**") executed by Debtor and also recorded with the Recorder's Office at Rec. Doc. No. 2015-013816. Atlas further claims they are entitled to reimbursement of administrative expenses in the alleged amount of $247,544.45.

DVSCC originally obtained a loan from KS State Bank ("**KSB**"). KSB subsequently sold the loan to Atlas. On or about March 17, 2017, a fire occurred at the Property, severely damaging the five (5) unit building on the Property. After the fire, Debtor was unable to continue to make the mortgage payments on the Property. Debtor's insurer, State Farm, paid insurance proceeds to Debtor and KSB totaling $158,191.06 related to the fire ("**First**

DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT

**Insurance Proceeds**").[1] On or about May 31, 2018, State Farm paid Debtor and Atlas an additional $9,834.76 in insurance proceeds related to the fire claim ("**Second Insurance Proceeds**" and together with the First Insurance Proceeds, the "**Fire Insurance Proceeds**"). On or about July 19, 2018, while the Property was in the sole possession and control of Atlas, a roof collapse ("**Roof Collapse**") occurred at the Property caused by the unpermitted demolition activities authorized by Atlas. Once again, State Farm covered losses associated with the Roof Collapse, and on or about September 5, 2018 issued a check for such insurance proceeds totaling $98,509.29 ("**Collapse Insurance Proceeds**" and together with the Fire Insurance Proceeds, the "**Insurance Proceeds**"). Debtor has been locked in litigation with Atlas for nearly three (3) years and sought bankruptcy protection in an effort to reorganize its financial affairs and prevent the foreclosure of the Property by Atlas.

## IV.    SIGNIFICANT EVENTS DURING THE CHAPTER 11

### a.  Administrative Proceedings

DVSCC filed its Petition for Relief under Chapter 11 on January 16, 2020 commencing the instant bankruptcy proceeding ("**Bankruptcy Proceeding**"). On or about February 12, 2020, Debtor attended an initial debtor interview with the analyst for the U.S. Trustee's Office. On or about February 18, 2020, the first meetings of creditors in the Bankruptcy Proceeding was held and concluded.

---

[1] KSB transferred the rights in the First Insurance Proceeds to Atlas when it sold the loan.

Case 2:20-bk-00570-BKM    Doc 232    Filed 04/14/21    Entered 04/14/21 19:18:45    Desc
Main Document      Page 5 of 50

### b. Order to Show Cause

On January 17, 2020, the Court issued an Order to Show Cause as to why DVSCC's case should not be dismissed for lack of counsel and set a hearing on February 4, 2020 (the "**February 4 Hearing**")(*see* Dkt. No. 6). Pursuant to the Minute Entry (*see* Dkt. No. 33) the matter was dismissed as Moot due to the appearance of Keery McCue, PLLC ("**KM**").

### c. Expedited Motion to Dismiss Chapter 11

On January 21, 2020, Atlas filed an *Expedited Motion to Dismiss Chapter 11* (*see* Dkt. No. 11). On February 3, 2020, DVSCC filed an *Objection to the Expedited Motion to Dismiss Chapter 11* (*see* Dkt. No. 28). After the February 4 Hearing, the Court took the Matter under Advisement and after a second hearing on February 13, 2020, entered an order denying the Expedited Motion to Dismiss Chapter 11 (*see* Dkt. Nos. 36 and 38).

### d. Retention of Professionals

On January 28, 2020, DVSCC filed a Petition for Authority to Retain Keery McCue, PLLC ("**KM**") to act as its bankruptcy counsel. The Court signed an Order Appointing KM as bankruptcy counsel on January 29, 2020 (*see* Dkt. No. 21). On February 3, 2020, Atlas filed an Objection to Employment of Counsel for Debtor (*see* Dkt. No. 27). After the February 4 Hearing, KM filed a Supplement Verified Statement of Professional Pursuant to FRBP 2014 (*see* Dkt. No. 30) and on February 11, 2020 Atlas filed a Second Objection to Employment of Counsel for Debtor (*see* Dkt. No. 34). On February 24, 2020, DVSCC filed a Response to Atlas' Objections to Employment of Counsel for Debtor (see Dkt. No. 46). The Court signed a Minute Entry Order on March 2, 2020 Appointing KM as bankruptcy counsel as of February 26, 2020 with the caveat that KM file a Second

Supplemental Verified Statement of Professional Pursuant to FRBP 2014 ("**Second Supplemental**")(*see* Dkt. No. 54). The Second Supplemental was timely filed on March 6, 2020.

On November 6, 2020, Shawn McCabe and Wright Law Offices ("**WLO**") substituted in for KM as counsel for DVSCC. (*see* Dkt. No. 155).

### e. Motion to Extend Time to File Schedules and Statements

On January 29, 2020, DVSCC filed a Motion to Extend Time to File Schedules and Statements (*see* Dkt. No. 22). The Court signed an Order Granting the Motion to Extend Time to File Schedules and Statements on January 29, 2020 (*see* Dkt. No. 24).  On February 6, 2020, DVSCC filed the completion of its schedules and statements (Dkt. No. 32).

### f. Motion to Compel Turnover

On February 21, 2020, DVSCC filed a *Motion to Compel Turnover of Property of the Estate Pursuant to 11 U.S.C. §§ 362(a)(3), (a)(6) and 543(b)* ("**Motion to Compel**")(*see* Dkt. No. 40). On March 7, 2020, Atlas filed a *Response to the Motion to Compel* (*see* Dkt. No. 61). On March 23, 2020, DVSCC filed *a Reply to Atlas' Response to the Motion to Compel* (*see* Dkt. No. 67). On March 5, 2020, DVSCC filed a Notice of Hearing setting a hearing on the Motion to Compel for April 7, 2020 ("**April 7 Hearing**"). At the April 7 Hearing, the Court granted DVSCC's Motion to Compel and ordered that Atlas turnover the Property, the rents and the remainder of the Insurance Proceeds (Dkt. No. 69).

Case 2:20-bk-00570-BKM    Doc 232    Filed 04/14/21    Entered 04/14/21 19:18:45    Desc
Main Document    Page 7 of 50

### g. Motion for Relief from Stay

On February 27, 2020, Atlas filed a *Motion for Relief from Stay* ("**Motion for Relief**") regarding Real Property located at: 601 North D Street, Eloy, AZ 85131 and 603 North D. Street, Eloy, AZ 85131 (the "**Property**")(*see* Dkt. No. 51). On March 12, 2020, DVSCC filed an Objection to the Motion for Relief.  On March 13, 2020, Atlas filed a *Notice of Preliminary Hearing on the Motion for Relief* setting the preliminary hearing on the Motion for Relief for April 7, 2020. At the April 7 Hearing, the Court ruled that the Motion for Relief will track with Plan Confirmation. The Motion for Relief is currently pending before the Court and tracking with the hearings on DVSCC's Disclosure Statement.

### h. Use of Cash Collateral

On April 20, 2020, DVSCC filed an *Emergency Motion for Authorization to Use Cash Collateral* ("**CC Motion**")(*see* Dkt. No. 71). Pursuant to the Motion, DVSCC requested an order authorizing the use of cash collateral in accordance with the Budget attached to the Motion. An initial hearing was held on April 24, 2020 ("**Initial Cash Collateral Hearing**").  At the Initial Cash Collateral Hearing, the Court found that DVSCC and Atlas had reached a tentative agreement as to the interim use of cash collateral (*see* ME Order at Dkt. No. 80 which constitutes "**First Interim CC Order**"). Regarding adequate protection, the Court found that DVSCC's payment of $1,120.00 to Atlas and a sequestering of the Insurance Proceeds in a separate DIP account provided adequate protection to Atlas for their secured interest in the Property under the Deed of Trust and claimed interest in the Insurance Proceeds. *Id.* at pg. 2. DVSCC has made monthly adequate protection payments to Atlas since this date.

The Court set a continued hearing on cash collateral for April 28, 2020 ("**Continued CC Hearing**"). At the Continued Hearing, DVSCC and Atlas agreed to the use of cash collateral. On April 30, 2020, the Court signed an Order Granting Debtor's Emergency Motion for Authorization to use Cash Collateral ("**CC Order**")(*see* Dkt. No. 85).

### i. Claims Bar Date

The Court has set a Claims Bar Date of August 4, 2020. (*see* Dkt. No. 98)

### j. Appointment of Unsecured Creditors Committee

On February 26, 2020, the United States Trustee's Office filed a statement concerning its inability to appoint a committee of unsecured creditors. (*see* Dkt. No. 49).

### k. Application to Employ Appraiser

On May 29, 2020, DVSCC filed an *Ex Parte Application to Employ Josephs Appraisal Group as Appraiser for Debtor* ("**Ex Parte Application**") so as to obtain an appraisal report as to the value of the Property (Dkt. No. 90). On June 1, 2020, the Court entered a conditional order granting the Ex Parte Application (*see* Dkt. No. 93). DVSCC also anticipates filing an application to employ a building inspection company to provide an inspection as to the condition of the Property.

### l. Atlas Proof of Claim #3

On April 21, 2020, Atlas filed a Secured Claim in the amount of $617,704.56 related to its first position lien Deed of Trust and Assignment of Rents secured by the Property (Claims Register – Claim No. 3). Atlas filed two amended proofs of claim on May 20, 2020 in the same amount. (Claims Register – Claim Nos. 3-2 and 3-3). On July 31, 2020, Atlas filed their fourth amend proof of claim, alleging their entire claim of $643,235.99 was

Case 2:20-bk-00570-BKM    Doc 232    Filed 04/14/21    Entered 04/14/21 19:18:45    Desc
Main Document    Page 9 of 50

secured by the Property, the Insurance Proceeds, and the Rents. ("**Claim 3-4**") (Claims Register – Claim No. 3-4). Atlas alleges their claim to be secured by the Property through the Deed of Trust, secured against the Insurance Proceeds, and secured by the rents collected on the Property through the Assignment of Rents. Atlas further claims that $247,544.45 of their claim is entitled to priority as an Administrative Expense Claim.

DVSCC has objected to Claim 3-4. (see Dkt. No. 176 and 211). DVSCC contends that Atlas Secured Claim is limited by the express language of the Deed of Trust to $275,000.00. Specifically, the Deed of Trust states in no uncertain terms, "MAXIMUM LIEN. The lien of this Deed of Trust shall not exceed at any one time $275,000.00." *see* Exhibit B.

DVSCC contends that the Assignment of Rents is incorporated into the Deed of Trust and thereby also subject to the $275,000 maximum lien amount. The Deed of Trust further states,

> THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST.

Exhibit B at pg. 3. Accordingly, Atlas' Secured Claim under the Deed of Trust and the Assignment of Rents cannot exceed $275,000.00 at any one time.

The third component of Atlas's Claim is that their Secured Claim is secured by the Insurance Proceeds in addition to the Property and the Rents. Atlas has not perfected any such lien and bases their argument solely on contract law. DVSCC objects to this position

on the grounds that the Deed of Trust provides clear instructions as to how any insurance proceeds are to be paid out. Specifically, the Deed of Trust states:

> Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay amount owing to the Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to principle balance of the Indebtedness.

Exhibit B at pg. 6. Here, there is no dispute the 180 day deadline is passed. Atlas has not committed the funds to repair: they have not paid licensed contractors for repair work or entered into contract for such repairs. Accordingly, the Insurance Proceeds must be applied in accordance with the above provision of the Deed of Trust.

Finally, the Pinal County Superior Court, in S1100CV201801357, has already litigated this issue and rendered an Order on September 17, 2019. *See* Ruling on Matter Under Advisement attached as "**Exhibit C**". There, the court found,

> Any proceeds not disbursed within 180 days from when the lender obtains the proceeds shall be used: first, to pay lender any overdue amounts due, then, second, accrued but unpaid interest on the note, and third, a dollar for dollar principal reduction of the note unless those funds have been "committed."

Exhibit C at pg. 3. That court interpreted "committed" to mean "Atlas entering into a written contract with another entity to perform work on the property." Exhibit C at pg. 3. The court further found,

> Atlas conceded that 180 days had passed since Atlas received most (if not all) of the checks from the insurance company. Atlas made that representation to the Court over 90 days ago. The Court presumes that the 180-day period has now run as to all checks.

-11-

Exhibit C at pg. 3. Finally, the court "ORDERED if Atlas has not entered into an actual written contract for the repair of the property within 180 days of receiving the proceeds, then the proceeds shall be applied in the order outlined by the Court above." Atlas had not entered into such a contract at that time and disclosed no such contracts during discovery prior to that Ruling. DVSCC contends that the Insurance Proceeds must be applied in accordance with the Pinal County Superior Court's Order and the language of the Deed of Trust.

**m. Atlas Administrative Expense Claim**

On July 17, 2020, Atlas submitted their *Amended First and Second Application for Compensation and Reimbursement of Expenses for Custodian* ("**Atlas' Administrative Claim**"). (*see* Dkt. No. 115). Atlas seeks reimbursement of $247,544.45 in alleged pre-petition expenditures on the Property while it was in Atlas' possession. DVSCC objects to approval of this claim on the grounds Atlas was not a 'custodian" of the Property for purposes of Bankruptcy Code Section 503(b)(3)(E), Atlas has not properly accounted for its expenditures, and Atlas' expenditures were unreasonable and unnecessary. (*see* Dkt. No. 119 and 176). Atlas contends they are entitled to reimbursement under Bankruptcy Code Section 503(b)(3)(E). Specifically, Atlas contends they were acting as a custodian and all costs expended on the Property were reasonable and necessary. DVSCC has objected to this claim on the grounds 1.) that Atlas was not a custodian as defined by the Bankruptcy Code; 2.) the expenditures were not necessary; and 3.) the expenditures were not reasonable.

DVSCC contends that rather simply repairing damages, Atlas unnecessarily upgraded the property and did so in a manner that violated Arizona law. Specifically, Alas utilized the work of unlicensed contractors and did not obtain all necessary permits for the work that was done. Just to give a few examples, Atlas employed unlicensed contractors to replace roofs, install air conditioning units, install water heaters, perform plumbing work, install high voltage electrical wires, replace electrical panels/fuse boxes, install cabinets, and install new flooring. Not only did Atlas fail to perform work up to applicable industry standards, the inferior quality of work in attempting to rebuild a fire damaged building led to a total collapse of the remaining portion of that building. Atlas' Administrative Claim is set to be scheduled for trial in late 2021. It is currently in the discovery phase. DVSCC believes Atlas' Administrative Claim will be significantly reduced if not eliminated by the conclusion of the trial on these issues. This matter is currently set for resolution at trial in late 2021. (*see* Dkt. No. 178).

**n. Atlas Motion for Leave to Amend Proof of Claim**

Atlas filed a proof of claim and amended it three times prior to the expiration of the August 4, 2020, proof of claims deadline. (*see* Claims Register POC 3-1, 3-2, 3-3 and 3-4). On November 5, 2020, Atlas filed a *Motion to for Leave to Amend Proof of Claim* seeking permission to include a judgment lien of approximately $74,000.00 as part of their timely filed proof of claim (Dkt. No. 150 "**Motion to Amend POC**"). Over DVSCC's objection, the Court granted the Motion to Amend POC, allowing Atlas to file a new proof of claim, to be considered timely, to include their judgment lien claim ( Dkt. No. 184, "**Order to Amend**").

### o. Atlas Motion to Set Valuation Hearing

On November 23, 2020, Atlas filed *Atlas Residential's Motion to Set Evidentiary Hearing to Value Real Property* (Dkt. No. 170, the "**Motion to Value Property**"), seeking to set an evidentiary hearing to determine the value of the Property. DVSCC responded in opposition on December 7, 2020, filing their *Objection to Motion/Application to Set Valuation Hearing on Real Property* (Dkt. No. 175, the "Objection to Property Valuation"). Atlas filed their Reply to DVSCC's Objection on December 18, 2020 (Dkt. No. 181).

Atlas' Motion to Value Property was eventually heard on March 16, 2021, where the Court determined that the Motion to Value Property would be granted. *See* Dkt. No. 216. On March 19, 2021, the Court entered the Order Setting Video Evidentiary Hearing and Establishing Procedures. Dkt. No. 218. The matter is set for a video evidentiary hearing on June 1, 2021. *Id.*

### p. Atlas Proof of Claim #7 - Judgment Lien Claim

Pursuant to the Order to Amend, on December 22, 2020, Atlas filed another proof of claim (Claims Register Claim 7-1 "**Claim 7-1**"). Claim 7-1 reincorporated all of the claims of Claim 3-4 and also added in the new Judgment Lien Claim totaling $83,823.25 ("**Judgment Lien Claim**"). This brought the total secured claim amount of Claim 7-1 to $727,059.24. Additionally, since Atlas has refused to withdraw Claim 3-4 or properly amend Claim 7-1, Atlas currently has two secured claims claiming a combined total secured claim of $1,370,295.23.

The Judgment Lien Claim is based on civil judgment obtained against Victor Granado on or about December 20, 2016, in Maricopa County Superior Court, case no. CV2016-091334 (the "**Judgment**") by irrelevant third party. The Judgment was recorded on or about January 20, 2017 in Pinal County. *See* Claim 7-1, Exhibits B-L at pg. 55. Atlas purchased the Judgment on or about March 1, 2018. Atlas argues that Lots 2 and 4 of the Property were vested in Victor Granado when the Judgment was recorded in January 2017, effectively creating a lien on the Property for the Judgment amount.

On March 12, 2021, DVSCC filed its *Amended Objection to Claim 3,7 submitted by creditor Atlas Residential LLC* (Dkt. No. 211 "**Amended Objection to Claim 3-4 and Claim 7**") amending its objection to Claim 3-4 and objecting to Claim 7. DVSCC fully incorporates its Amended Objection to Claim 3-4 and 7-1 herein as if stated in full. On April 1, 2021 Atlas filed their *Response to Debtor's (I) Amended Objection to Atlas's Proof of Claim 3-4 and (II) Objection to Atlas's Proof of Claim 7-1* Dkt. No. 224. An evidentiary hearing has not yet been set to resolve DVSCC's claim objections.

a.  Property Ownership Issue Raised by Atlas

In late 2016 a series of transfers involving the Property took place. First, on November 2, 2016, a quit claim deed was recorded transferring Lots 2 and 4 of the Property from DVSCC to Juanita Granado, a former spouse of the Princapal Victor Granado (the "**First Transfer**"). *See* Pinal County Recorder Fee Number 2016-074236, filed in this case at Dkt. No. 150-1, pg. 13.

Then, of December 9, 2016, a quit claim deed was recorded transferring Lots 1 and 4 of the Property from Juanita Granado to Victor Granado (the "**Second Transfer**"). *See*

Case 2:20-bk-00570-BKM    Doc 232    Filed 04/14/21    Entered 04/14/21 19:18:45    Desc
Main Document    Page 15 of 50

Pinal County Recorder Fee Number 2016-083574, filed in this case at Dkt. No. 150-1, pg. 16. Attached to this quit claim deed, was the Victor L Granado Irrevocable Trust Agreement (the "Irrevocable Trust"). The Irrevocable Trust specified that Victor Granado was the "Grantor" and Jamie Granado was the "Trustee." The Irrevocable Trust specified that Victor Granado conveyed Lots 2 and 4 of the Property to the Irrevocable Trust (the "**Third Transfer**").

Finally, on January 4, 2017, a quit claim deed was recorded transferring Lots 2 and 4 of the Property from the Irrevocable Trust to DVSCC (the "**Fourth Transfer**"). *See* Pinal County Recorder Fee Number 2017-081901, filed in this case at Dkt. No. 150-1, pg. 51.

Atlas alleges the Third Transfer above is legally invalid because it did not comply with A.R.S. Section 33-401, specifically, that Victor Granado's signature was not notarized. Atlas argues that Lots 2 and 4 are still vested in Victor Granado as a result.

On June 27, 2017, Old Republic National Title Insurance Company prepared a Trustee Sale Guarantee on behalf of Atlas (the "**Trustee Sale Guarantee**") *see* Dkt. No. 150-1 at. Pg. 54. The Trustee Sale Guarantee was of the opinion that Lots 2 and 4 of the Property were still vested in Victor Granado as of the date it was prepared. In May of 2017, First American Title Insurance Company prepared a Commitment for Title Insurance, in which it was of the opinion that title to Lots 2 and 4 of the Property were at that time vested in Victor Granado. *See* Dkt. No. 224-1 at pg. 4. On July 19, 2017, Old Republic National Title Insurance Company prepared a Commitment for Title Insurance, in which it was of the opinion that Lots 2 and 4 of the Property were at that time vested in Victor Granado. *See* Dkt. No. 224-1 at pg. 12. Atlas argues the Trustee Sale Guarantee and both

Commitments for Title Insurance demonstrate that Victor Granado owns Lots 2 and 4 of the Property.

DVSCC argues that it owns the entirety of the Property. DVSCC argues that Atlas must bring forth some type of procedural action to invalidate the Third Transfer. Specifically, DVSCC argues that Atlas must bring an Adversary Proceeding under Bankruptcy Rule 7001. DVSCC further argues that a fraudulent transfer action is limited by the Bankruptcy Code in Section 548(a) to those done in last two years, and limited by Arizona Law in A.R.S. Section 44-1009 to within four years of the transfer. The transfer Atlas complains of was recorded over four years ago.

Atlas has taken the position that it has proven a prima facie case for valid secured claim for the Judgment Lien Claim and Debtor has failed to rebut it, so it therefore stands enforceable against the DVSCC bankruptcy estate. *See* Dkt. No. 224. However, Atlas fails to take into account the realities of its arguments. If Atlas' arguments are correct, then Victor Granado is still the vested owner of Lots 2 and 4 of the Property, which would mean those lots are not property of this bankruptcy estate and the Judgment Lien Claim is not enforceable against DVSCC or any of its property.

If DVSCC is correct in their arguments, the Property was fully vested in DVSCC when the Judgment was recorded. DVSCC would still own the entirety of the Property without the encumbrance of the Judgment Lien Claim.

No matter the outcome, the Judgment Lien Claim will not be enforceable against DVSCC or any of its property. Due to this fact, the Judgment Lien Claim is not accounted for in the Chapter 11 Plan. Currently there is no set track for resolution of these issues.

**q. Atlas Motion for Order That It Was Acting as a Custodian**

On January 28, 2021, Atlas filed, *Motion to Determine / Atlas Residential's Motion for Order That It Was Acting As a Custodian Re Its Amended First and Second Application for Administrative Expense* (Dkt. No. 196, "**Custodian Motion**") seeking a determination that it was acting as a custodian under the Bankruptcy Code for purposes of Atlas' Administrative Claim. On March 1, 2021, DVSCC filed *Response to Motion/Application by Atlas for Order That They Were Acting as a Custodian* (Dkt. No. 205, "**Response to Custodian Motion**") responding to Atlas' Custodian Motion. On March 23, 2021, Atlas filed their *Atlas's Reply in Support of Its Motion for Order That It Was Acting As a Custodian* (Dkt. No. 222). Oral argument on the Custodian Motion was heard by this Court on April 8, 2021. *See* Dkt. No. 226. The Court's decision on this issue is pending.

**V.     DESCRIPTION OF ASSETS AND LIABILITIES OF DVSCC**

The values ascribed to the assets below are based on DVSCC's best estimate and other factors such as the purchase price, comparable sales, and tax assessments, and where applicable as referenced below, on appraisals obtained.

**a. Real Property**

The Property is the only real property owned by the DVSCC. The Property is an apartment complex originally comprised of thirteen (13) units located at 603 & 607 N. D. Street, Eloy, AZ 85231. Five (5) of the units were damaged by a fire and subsequently needed to be demolished and removed after Atlas removed the demising walls of the units during demolition causing an irreparable roof collapse. Atlas holds a first position lien up

to a maximum of $275,000 on the Property and the Insurance Proceeds.[2]

On or about May 26, 2020, DVSCC obtained an appraisal of the Property by Joseph's Appraisal Group valuing the Property between $249,000.00 and $258,000.00.[3] (*see* JAG Appraisal attached as **"Exhibit D"**). On or about August 17, 2020, Atlas obtained an appraisal of the Property from Integra Realty Resources valuing the Property at approximately $510,000.00. (*see* IRR Appraisal attached as **"Exhibit E"**). Atlas' appraisal by IRR is based on the "extraordinary assumption" that "the existing footing/foundation remaining from the 5 units that were destroyed/removed are still capable of being used in the reconstruction of the units and will meet building code requirements without significant modification." (*see id.* at pg. 2). The existing footing and foundation has not been evaluated by anyone with expert structural engineering knowledge that could support IRR's extraordinary assumption.

DVSCC believes the JAG appraisal to most accurately reflect the value of the Property in its current condition. After disposition costs, DVSCC believes there is no equity in the Property for the benefit of the Estate.

### b. Personal Property

#### 1. Cash on Hand

DVSCC had no cash on hand as of the date of this Amended Disclosure Statement.

#### 2. Bank Accounts

DVSCC had $14,678.53 in its DIP account ending in 5722 (operating) with UMB Bank N.A. as of February 28, 2021. (*see* Dkt. No. 218).

---

[2] Pursuant to Atlas' Deed of Trust, the maximum lien amount secured by the Deed of Trust is $275,000.00.
[3] Debtor reserves all rights and defenses with regard to the actual value of the Property.

3.      <u>Other Cash Equivalents</u>

DVSCC listed other cash equivalents which includes Insurance Proceeds turned over to Atlas in the approximate amount of $280,000.00. Atlas turned over the remainder of the Insurance Proceeds totaling $236,895.08 which are currently being held by DVSCC in a segregated debtor-in-possession bank account. *see* Dkt. No. 218.

4.      <u>Tenant Deposits</u>

DVSCC had $5,845.03 in its DIP account ending in 5749 (tenant deposits) with UMB Bank N.A. as of February 28, 2021. (*see* Dkt. No. 218).

5.      <u>Causes of Action Against Third Parties</u>

DVSCC is the Plaintiff in a pending Adversary Proceeding against Atlas. Prior to the commencement of this bankruptcy proceeding, DVSCC and Atlas had been engaged in civil litigation in Pinal County Superior Court. On or about August 3, 2018 Atlas brought suit against DVSCC, Victor Granado and Jamie Granado in S1100CV201801357. Atlas essentially sought declaratory relief that it was entitled to possession of the Property and Insurance Proceeds.

Or about that same day, August 3, 2018, Jamie Granado and DVSCC brought suit against Atlas, Ronald Herb and other parties then unknow in S1100CV201801363. This was an action to recover damages for wrongful foreclosure, breach of contract, and temporary, preliminary, and permanent injunctive relief.

These actions were subsequently consolidated by the Pinal County Superior Court into S1100CV201801357. On or about June 25, 2019, Jamie Granado, DVSCC, and Victor Granado filed their Verified First Amended Complaint (the "**Complaint**"). The Complaint

sought damages for wrongful foreclosure[4], breach of contract, negligence, breach of covenant of good faith and fair dealing, consumer fraud, breach of fiduciary duty, injunctive relief, and a demand for an accounting by Atlas.

On or about April 10, 2020, S1100CV201801357 was removed to the bankruptcy court as an adversary proceeding in case number 2:20-ap-00093 (the "**Adversary Case**"). The Adversary Case is in the discovery phase of litigation and set to be scheduled for trial in November of this year. The Adversary Case presents significant additional litigation for at least the remainder of the year.

### c. Financial Reports

DVSCC is current on filing its monthly operating reports. These can be obtained from the Court docket or by contacting DVSCC current counsel, WLO.

### d. Administrative Expenses

Administrative expenses in this case consist primarily of the Administrative Claims discussed in Section VIII below. Additionally, DVSCC incurs an average of $2,693.50 in monthly operating costs. This includes utilities, taxes, insurance, repairs, maintenance, and a proposed property management fee of $300 per month. *See* Monthly Budget attached as "**<u>Exhibit F</u>".** Since April 2020, DVSCC has been making monthly adequate protection payments to Atlas of $1,120.00. These payments will cease on the Effective Date of the Plan.

---

4 Count I Wrongful Foreclosure was dismissed by the Pinal County Superior Court on October 25, 2019.

-21-

DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT

Case 2:20-bk-00570-BKM    Doc 232    Filed 04/14/21    Entered 04/14/21 19:18:45    Desc
Main Document    Page 21 of 50

**e. Payments by Consulting Experts LLC to WLO**

Consulting Experts, LCC, which is member/managed by a Principal of DVSCC, Jamie Granado, has to date paid $50,000.00 to WLO for the purpose of funding DVSCC's ongoing legal fees. *See* Dkt. Nos. 199, 204, and 231. These payments have reduced the administrative burden of DVSCC and has allowed it to continue reorganization efforts through this case. Consulting Experts, LLC does not intend to make any claims against the estate for reimbursement of these funds.

**VI.  <u>ADMINISTRATIVE CLAIMS</u>**

**a. KM**

Previous Counsel for the DVSCC, KM, has filed two fee applications. KM's First Application for Allowance and Payment of Compensation and Reimbursement of Expenses of Keery McCue was filed on August 26, 2020, and sought approval of $23,701.31 for services rendered between February 27, 2020, and May 31, 2020. (*see* Dkt. No. 129). KM's First Application was approved by the Court and offset by $11,000.00 KM had held in trust. (*see* Dkt. No. 166).

On December 18, 2020, KM filed its Second and Final Application for Allowance and Payment of Compensation and Reimbursement of Expenses of Keery McCue, seeking approval of $29,190.18 for services rendered between June 1, 2020, and November 6, 2020. (*see* Dkt. No. 182). The total outstanding Administrative Claim due to KM is $41,891.49.

**b. WLO**

WLO currently has $50,000.00 in its trust account to be applied towards its fees and reimbursement of expenses. On March 2, 2021, WLO submitted an *Interim Application of*

*Debtor's Counsel for Compensation of Fees and Reimbursement of Expenses* (Dkt. No. 206, "**WLO Fee App**"). The WLO Fee App covers the time period of November 6, 2020 through March 1, 2021, and simply seeks authority to apply a total of $39,522.50 of the funds held in trust to balance due for DVSCC. The WLO Fee App does **not** seek to apply any funds of the DVSCC bankruptcy estate or to maintain any additional administrative claim for the amount sought. The WLO Fee App was re-noticed out all parties on April 12, 2021 and is pending Court approval. *See* Dkt. No. 230.

WLO believes additional legal fees may range between $50,000.00 and $100,000.00 depending on the extent to which the remaining issues are litigated. It is evident Atlas is attempting to blead the Debtor dry through a policy of scorched earth ligation. WLO anticipates the arrangement with Consulting Experts LLC will continue. Accordingly, WLO does not anticipate the need to make an Administrative Claim in the case. However, should this situation change, WLO reserves the right to apply for a claim under Bankruptcy Code Section 507(a)(2) for any unpaid amounts for services rendered and have such a claim treated as Class 1-A.

### c. Joseph's Appraisal Group

Joseph's Appraisal Group has submitted an administrative expense claim for $1,000.00. (*see* Dkt. No. 133). There will be additional administrative expenses for related costs such as expert witnesses.

**d. Atlas**

As discussed in Section IV(m) above, Atlas has submitted an administrative expense claim of $247,544.45. (*see* Dkt. No. 115, Claim 3-4 and Claim 7-1). The claim is disputed and subject to ongoing litigation. This claim will range from $0 to $$247,544.45.

## VII. <u>PRIORITY UNSECURED CLAIMS</u>

**a. Arizona Department of Revenue**

The Arizona Department of Revenue (the "**AZDOR**") filed a proof of claim for a priority unsecured claim of $5,757.52. *see* Claim 1-3. Additionally, the AZDOR filed a proof of claim for $460 but this was subsequently withdrawn. *See* Claim 6-1 and Dkt. No. 138. The AZDOR claim will be treated a Class 1-C Priority Unsecured Claim for $5,757.52 and be paid monthly through the Plan until paid in full. Interest will be applied at the rate of 4.6%.[5] Monthly payments will be $107.60 for sixty (60) months.

**b. Internal Revenue Service**

The Internal Revenue Service (the "**IRS**") filed a proof of claim for a priority unsecured claim of $1,700.00. *see* Claim 2-1. This claim will be treated a Class 1-C Priority Unsecured Claim for $1,700.00 and be paid monthly through the Plan until paid in full, subject to a 4.6% interest rate. Monthly payments will be $31.77 for sixty (60) months.

**c. Maricopa County Treasurer**

The Maricopa County Treasurer was listed as a priority unsecured creditor with an unknown debt on DVSCC's Schedules. *See* Dkt. No. 32 at pg. 14. The Maricopa County

---

[5] Section 6621 of the Internal Revenue Code establishes the interest rates on underpayments of tax less than $10,000 as the sum of the federal short-term rate plus 3 percentage points. The AZDOR follows this same formula. The current Federal Short Term rate is 1.6%.

Treasurer failed to file a proof of claim in this case. Accordingly, the Maricopa County Treasurer will be treated as a claim for $0.00 and provided no payments through the Plan.

## VIII.  SECURED CLAIMS

### a.  Atlas

As discussed in detail in Section IV(l) and IV(p) above, Atlas has submitted two claims, Claim 3-4 and Claim 7-1, alleging a combined total secured claim of $1,370,295.23. DVSCC asserts that the maximum possible claim Atlas can make is for $727,059.24. For reasons discussed in Section IV(l) and IV(p) above, DVSCC is confident that Atlas' total secured claim is limited to $275,000.00 under the Deed of Trust.

DVSCC will recognize an Allowed Unimparied Secured Claim of $275,000.00. ("**Atlas' Allowed Secured Claim**"). Atlas' Allowed Secured Claim shall accrue interest at the original contract rate of four and nine-tenths percent (4.9%) annual interest and shall be repaid as follows. DVSCC shall pay the Insurance Proceeds totaling $236,525.66 to Atlas at or near the Effective Date reducing the outstanding loan balance on Atlas' Allowed Secured Claim to $28,474.34. The remaining balance of the Allowed Secured Claim shall be re-amortized over three hundred (300) months with a balloon payment at month one-hundred and twenty (120). In addition to the principal reduction paid to Atlas from the Insurance Proceeds, DVSCC shall make equal monthly payments of principal and interest in the amount of $164.80 per month ("Monthly P&I Payment") commencing on the Effective Date.

Should there be difference between Atlas' Allowed Secured Claim and the total amount of indebtedness this Court determines DVSCC owes to Atlas it shall be treated in accordance with Class 3.

### b. Lane & Nach

On July 30, 2020, Lane & Nach, P.C. ("**Lane & Nach**"), filed a Secured Claim in the amount of $33,592.14. (Claims Register – Claim No. 4-1). Although the proof of claim states the amount is secured by a deed of trust against the Property, DVSCC is aware of no such recorded document. However, Lane & Nach has recorded a UCC1 lien for this claim against the Insurance Proceeds. (*see* Secretary of State File Number:2019-002-6724-8). The position of Lane & Nach's security interest in the Insurance Proceeds is potentially subject to litigation with Atlas. Moreover, if Lane & Nach's interest in the Insurance Proceeds is secondary to Atlas' interest, there would remain no funds to secure Lane & Nach's claim after they are applied to Atlas.

Under the Plan, DVSCC proposes to apply the Insurance Proceeds to Atlas' Secured Claim. DVSCC intends to provide Lane & Nach with a $28,553.32 lien against the Property, secondary to any remaining lien by Atlas under the Deed of Trust should any be found to exist. Lane & Nach's $28,553.32 secured claim would be paid by monthly payments under the plan without interest. Lane & Nach will result with an impaired secured claim, entitled to vote on the Plan.

### c. The City of Eloy

At the time this case was filed, the City of Eloy held a statutory lien against the Property in the amount of $10,450.00 for fees incurred for removal of construction debris

-26-

(Pinal County Recorder's Office Rec. Doc. 2019-099030). However, on or about June 25, 2020, the City of Eloy filed a release and discharge of said lien (Pinal County Recorder's Office Rec. Doc. 2020-060632). The City of Eloy has not filed a proof of claim in this case and the deadline by which to do so has passed. Accordingly, the City of Eloy will be treated as a claim for $0.00 and provided no payments through the Plan.

## IX.   NONPRIORITY UNSECURED CLAIMS

### a.  Atlas

In both of Atlas's proof of claims, Claim 3-4 and Claim 7-1, Atlas claims an Unsecured Claim for any amount that is determined to not be secured. After resolution DVSCC's Amended Objection to Claim 3-1 and Claim 7-1 is resolved this amount can be properly determined. It will range from $0 to $368,235.99.

### b.  Stanley J. Kartchner, Chapter 7 Trustee

The Chapter 7 trustee for Victor Granado's personal bankruptcy, case no. 4:17-bk-14574-BMW, filed a proof of claim for an unknown amount ("**POC 5-1**") (Claims Register – Claim No. 5-1). POC 5-1 specifies, "[t]o the extent any funds are remaining in the Desert Valley Chapter 11 after paying creditors through the Chapter 11 Plan, the Chapter 7 Granado Estate would be entitled to payment for its equity interest in Desert Valley." Victor Granado has a ½ interest in DVSCC. After paying creditors through the Chapter 11 Plan, DVSCC will have not surplus of funds remaining.

The range of the value for the Property is $249,000.00 to $510,000.00. Lane & Nach has a filed a secured claim for $33,592.14 and Atlas has filed a disputed secured claim for $727,059.24. Given the range of value for the Property, the range of potential secured

claims, and the cost of litigation, DVSCC asserts that there is no equity value in the Property on the date this case was filed. Accordingly, Stanley J. Kartchner, will be treated as a Class 3 Nonpriority Unsecured Claim for $0.00.

### c. The AZDOR

The AZDOR filed a proof of claim for a nonpriority unsecured claim of $56.99. *see* Claim 1-3. AZDOR will be treated as a Class 3 Nonpriority Unsecured Claim for $56.99

### d. The IRS

The IRS filed a proof of claim for a nonpriority unsecured claim of $1,900.00. *see* Claim 2-1. This claim will be treated a Class 3 Nonpriority Unsecured Claim for $1,900.00.

### e. MacQueen & Gottlieb, PLC

MacQueen & Gottlieb, PLC, is listed on DVSCC bankruptcy Schedules as having an unsecured claim of $25,000.00. *see* Dkt. No. 32 at pg. 15. This Creditor did not file a proof of claim. DVSCC and the Principals are jointly liable for this claim. *See* Dkt. Nos. 46, 46-1 and 46-2. Accordingly, MacQueen & Gottlieb will be treated as a Class 3 Nonpriority Unsecured Claim for $8,333.33 to account for DVSCC's one-third share of the debt owed. The Principals will provide payment directly to the creditor for the remaining amount owed.

### f. City of Eloy

The City of Eloy is listed on DVSCC bankruptcy Schedules as having an unsecured claim of $10,000.00 for fines. *see* Dkt. No. 32 at pg. 15. This Creditor did not file a proof of claim in this case. The City of Eloy maintains no liens against DVSCC or the Property. Additionally, subsequent lien release by the City of Eloy make clear that no balance is due

and owing from DVSCC. Accordingly, the City of Eloy will be treated as a Class 3 Nonpriority Unsecured Claim for $0.00.

### g.  Jess Loran

Jess Loran is listed on DVSCC bankruptcy Schedules as having an unsecured claim of $5,000.00. *see* Dkt. No. 32 at pg. 15. This Creditor did not file a proof of claim. As such, Jess Loran's claim will be treated as Class 3 Nonpriority Unsecured Claim for $5,000.00.

### h.  Emergency Cleanup Services

Emergency Cleanup Services is listed on DVSCC bankruptcy Schedules as having an unsecured claim of $5,000.00. *see* Dkt. No. 32 at pg. 15. This Creditor did not file a proof of claim. As such, Emergency Cleanup Services' claim will be treated as a Class 3 Nonpriority Unsecured Claim in the amount $5,000.00.

### X.  <u>THE OWNERSHIP INTEREST OF THE PRINCIPALS</u>

This class consists of the equity ownership of the Principals, Victor and Jamie Granado. The Plan provides that their equity ownership shall be extinguished and that on the effective date the Granados shall contribute the $20,000 cash payable to the allowed Administrative Claims in exchange for 100% of the equity of the reorganized debtor**.** On the effective date of the Plain, DVSCC will  be held by Jamie Granado and Victor Granado in equal shares as the Allowed Interest.

### XI.  <u>CLAIMS REGISTER</u>

Attached hereto as **<u>"Exhibit G"</u>** is a chart reflecting the status of claims filed in this case.

## XII.   CLASSIFICATION, IMPAIRMENT AND TREATMENT OF CLAIMS AND INTERESTS

THE FOLLOWING STATEMENTS CONCERNING THE PLAN ARE MERELY A SUMMARY OF THE PLAN AND ARE NOT COMPLETE. THE STATEMENTS ARE QUALIFIED ENTIRELY BY EXPRESS REFERENCE TO THE PLAN. CREDITORS ARE URGED TO CONSULT WITH COUNSEL OR EACH OTHER IN ORDER TO UNDERSTAND THE PLAN FULLY. THE PLAN IS COMPLETE, INASMUCH AS IT PROPOSES A LEGALLY BINDING AGREEMENT BY THE DEBTORS. AN INTELLIGENT JUDGMENT CANNOT BE MADE WITHOUT READING IT IN FULL.

## XIII.   CLASSIFICATION OF CLAIMS AND INTERESTS

   a.   **Classes**

   **1.**   Class 1-A Priority Administrative Claims under 11 U.S.C. §507(a)(2)

   i.   **Atlas** -undermined          $0 to $247,544.45

   ii.   **Joseph's Appraisal Group**          $1,000.00

   **2.**   Class 1-B Priority Administrative Claims Alternatively Treated under 11 U.S.C. §507(a)(2)

   i.   **KM**          $41,891.49

   **3.**   Class 1-C consists of Allowed Priority Unsecured Claims under 11 U.S.C. §507(a)(7) (Tenant Claims related to LP1).

   **4.**   Class 1-D Priority Unsecured Claims under 11 U.S.C. §507(a)(8) (Tax Claims).

   i.   **AZDOR**          $5,757.52

   ii.   **IRS**          $1,700.00

   5.   Class 2-A Unimpaired Secured Claims

   i.   **Atlas** – (Deed of Trust)          $275,000.00

   **6.**   Class 2-B Impaired Secured Claims

-30-

|      | **i. Lane & Nach, P.C.** | $28,553.32 |

**7.** <u>Class 3 Nonpriority Unsecured Claims</u>

|       | | |
|-------|---|---|
| **i.** | **Atlas** – undetermined | $0 to $368,235.99 |
| **ii.** | **Stanley J. Kartchner** | $0 |
| **iii.** | **AZDOR** | $56.99 |
| **iv.** | **IRS** | $1,900.00 |
| **v.** | **MacQueen & Gottlieb, LLC** | $8,333.33 |
| **vi.** | **City of Eloy** | $0 |
| **vii.** | **Jess Loran** | $5,000.00 |
| **viii.** | **Emergency Cleanup Services** | $5,000.00 |

**8.** Class 4 consists of the Ownership Interests of the Principals.

## XIV.   IMPAIRMENT OF CLASSES

Class 1-A, Class 1-B, and Class-1C, and Class 2-A are unimpaired under the Plan. All other classes are impaired, as that term is defined in 11 U.S.C. §1124.

## XV.   TREATMENT OF CLASSES

### a.   Class 1-A - Administrative Claims

Class 1-A consists of Allowed Priority Claims under 11 U.S.C. §507(a)(2) (Administrative Claims). Allowed Claims of Class 1-A shall be paid in full, in cash, by the earlier of the Effective Date or the date that such are allowed and ordered paid by the Court. Any Class 1-A Claim not allowed as of the Effective Date shall be paid as soon thereafter as they are allowed by the Court according to the terms of this Class.

### b. Class 1-B - Administrative Claims Treated Alternatively

Class 1-B consists of Allowed Priority Claims under 11 U.S.C. §507(a)(2) (Administrative Claims) which have agreed to be treated alternatively. Class 1-B claims shall be paid in monthly payments until paid in full, commencing on the Effective Date. DVSCC anticipates Class 1-B Claims will be paid in the first thirty (30) months of the Plan. Class 1-B will be paid in full prior to any distributions to Class 3 Nonpriority Unsecured Claims or any distributions to Class 4.

### c. Class 1-C: Tenant Claims

Class 1-B consists of Allowed Priority Claims under 11 U.S.C. §507(a)(7) relating to tenant security deposits, which includes: unsecured claims of individuals, to the extent of $1,800.00 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property…for the personal, family, or household use of such individuals, that were not delivered or provided. To the extent the Debtors retain a property and that any tenant has provided the Debtor a deposit relating to the lease of any real property that falls within the $1,800.00 debt limitations, the tenant's deposit rights shall be preserved and the Debtor shall perform and act with the deposit in accordance with the terms of the pre-petition lease. Any deposit that exceeds the $1,800.00 dollar limitation or definitional limitations set forth in 11 U.S.C. §507(a)(7) shall be treated as a general unsecured claim under Class 3. There are no currently pending Class 1-C claims.

### d. Class 1-D: Priority Unsecured Tax Claims

Class 1-D consists of Allowed Priority Unsecured Tax Claims under 11 U.S.C. §507(a)(8). Class 1-D shall be paid in full, in cash, in regular installment payments of a total value, as of the Effective Date of the Plan, equal to the Allowed Priority Claim, over a period ending five (5) years after the Petition Date, and in a manner that is not less favorable than the most favored non-priority unsecured claim provided for by the Plan (other than cash payments made to a class of creditors under §1122(b)). DVSCC reserves the right to pay off Class 1-D claims at an earlier date should the funds become available. Class 1-D claims will receive interest at the Tax Claim Rate (currently 4.6%).

### e. Class 2-A: Unimpaired Secured Claims

Class 2-A consists of Unimpaired Secured Claims. Class 2-A claims will be paid any cash collateral they are entitled to on or near the Effective Date of the Plan, thereby reducing their total Allowed Secured Claims. Class 2-A Claims will then be re-amortized over three hundred (300) months. Class 2-A Claims will be paid equal monthly payments of principal and interest at the original contract rate. Class 2-A Claims may be pre-paid at any time without penalty. DVSCC shall be deemed current on its obligations to all Class 2-A Claims upon the entry of the Confirmation Order. Once a Class 2-A Claim is paid in full as reflected herein, any lien holders shall release any and all rights or interests it may have in the collateral. If DVSCC fails to tender the payments as required herein, or if a tendered payment is not honored, then Class 2-A Claims holders shall provide written notice to DVSCC at 2999 N. 44th St., Ste. 600, Phoenix, AZ 85018, and if the default occurs while the above-captioned bankruptcy proceeding remains active, to DVSCC's counsel at

2999 N. 44th St., Ste. 600 Phoenix, AZ 85018, indicating the nature of the default. If DVSCC fails to cure the default with certified funds after the passage of ten (10) business days from the date said written notice is received by DVSCC and its counsel, if applicable, Class 2-A Claim holders may file a declaration of such uncured event of default with the Court. The terms herein shall control and resolve any claim Class 2-A Claims may have against any guarantor. Class 2-A Claims shall provide DVSCC with monthly statements beginning within thirty (30) days of the Effective Date of the Plan. To the extent any party must seek relief from the Court to compel compliance with the terms herein, the prevailing party shall be entitled to recover its attorneys' fees.

**f. Class 2-B: Impaired Secured Claims**

Class 2-B consists of Impaired Secured Claims which were secured by cash collateral that was spent. Class 2-B claims are provided a security interest in the Property for 85% of their original claim amount. Class 2-B claims are paid monthly payments without interest. Class 2-B claims will be paid in the first 60 months of the Plan. DVSCC reserves the right to pay off Class 2-B claims at an earlier date should the funds become available.

**g. Class 3 General Unsecured Claims**

Class 3 consists of the Nonpriority Unsecured Claims of Creditors. Class 3 Creditors will receive zero ($) payments under the Plan. The value of DVSCC's liquidation equity is $0. DVSCC is confident that regardless of which Property value is used, Atlas' or DVSCC's, there is negative liquidation equity.

Case 2:20-bk-00570-BKM    Doc 232    Filed 04/14/21    Entered 04/14/21 19:18:45    Desc
Main Document    Page 34 of 50

### h.  Class 4:  Ownership Interest of the Principals

Class 4 consists of the Ownership Interests of the Principals of DVSCC, Jamie and Victor Granado. In consideration for retaining their interest, the Principals shall contribute to DVSCC the amount of $20,000.00 ("New Value"). In exchange for this new cash contribution, the Principals shall retain their Ownership Interest in DVSCC, but unless, and until all senior Allowed Claims are paid in full in accordance with the terms of the Plan, the Principals shall receive no distribution on account of their Ownership Interest. The New Value will be utilized to pay Class 1-A claims on the Effective Date of the Plan. Any remaining amount of New Value will be then be applied to Class 1-B claims.

## XVI.  Effect of a Secured Creditor's Election under Section 1111(b)

Section 1111(b) of the Bankruptcy Code covers the treatment of certain Claims and Interests of Creditors. Specifically, §1111(b) provides an option (the "**Election**") for the undersecured nonrecourse creditors being dealt with in the Plan (hereinafter sometimes the "**Undersecured Creditor**") to have their Deficiency Claims treated as secured debt, a deviation from the bifurcation provisions of 11 U.S.C. §506(a). In short, the Bankruptcy Code permits an Undersecured Creditor to choose between two possible treatments with respect to their Deficiency Claims. First, these Undersecured Creditor can have their Deficiency Claim treated as recourse Unsecured Claim, whereby they will have the right to vote their Claim in Class 3-B (Compass Bank's General Unsecured Claims). Alternatively, an Undersecured Creditor can choose to have the entirety of their Claim treated as fully secured by their collateral.  11 U.S.C. §1111(b)(2).

There is at least one instance, however, in which this Election is unavailable, and

this exception applies to the Plan. Pursuant to Section 1111(b)(1)(B)(ii), if a Creditor's lien is of inconsequential value, it is prevented from making the section 1111(b) election. Therefore, the Election is not available to junior lienholders who are wholly unsecured.

With respect to the Undersecured Creditor, despite their nonrecourse status, the Plan provides they shall have an unsecured Deficiency Claim.[6] However, when a Creditor makes the Election, such Creditor will, by virtue of the application of this statute, forego its Deficiency Claim and instead elect to have its entire Claim treated as if it were fully secured. In such case the Debtor shall have the choice of either returning the collateral or of presenting the indubitable equivalent of the secured interest pursuant to Section 1129(b)(2)(A)(iii).

If an Undersecured Creditor makes the Election, its Allowed Secured Claim is not treated the same as a fully Secured Claim. Rather, the Election gives rise to an "election claim" equal to its total claim but allotted special treatment for purposes of plan confirmation. In the event an Undersecured Creditor makes the Election, its Allowed Secured Claim will be equal to its total Claim, and in order for the Plan to comply with Section 1129(b)(2)(A)(i)(I), the lien is not stripped down by Section 506(d). Subsection (II) of Section 1129(b)(2)(A)(i) guarantees such an electing creditor a stream of payments equal to its total claim. However, the stream of payments need only have a present value "of at least the value of such holder's interest in the estate's interest in such property." Therefore, the Undersecured Creditor will receive under the Plan the treatment set forth

---

[6] It should be noted that 502(b)(1) disallows any claim to the extent that it is unenforceable against the debtor or the debtor's property under any agreement or applicable law.  Therefore, the portion of a nonrecourse secured claim that exceeds the value of the collateral is unenforceable against both (1) the debtor and the debtor's other property; and (2) the collateral because the value of the collateral is insufficient to secure the entire claim.  Nevertheless, the Plan has provided that such an unsecured deficiency may be allowed and treated as an Unsecured Claim.

below if the identified Undersecured Creditor makes the Election and if the Debtor does not return the collateral securing its Claim.

An Unsecured Creditor will receive equal monthly payments for 30 years such that the total stream of payments is equivalent to the Allowed Secured Claim (without interest). At the anniversary of the 30th year, the Debtor will pay a balloon payment, if necessary, such that the net present value of the stream of payments to the Undersecured Creditor is equal to the value of such holder's interest in the estates' interest in such property. The discount rate for such payments with regard to the net present value shall be three percent (3.0%) per annum (or such market rate as the Court may determine).

Pursuant to Fed.R.Bankr.P. 3014, an election pursuant to §1111(b) by an Undersecured Creditor may be made at any time prior to the conclusion of the hearing on the disclosure statement or within such later time as the court may fix. The election must be in writing and signed unless made at the hearing on the Disclosure Statement.

# XVII. LIQUIDATION ANALYSIS

### a. DVSCC's Liquidation Analysis

The following is a Liquidation Analysis indicating what DVSCC believes creditors would receive in the event of a liquidation. The figures for "market value" and "liquidation value" are DVSCC's best estimate on what these assets are worth on a market or liquidation basis.[7] DVSCC assumes a chapter 7 trustee would not engage in the extensive and exhaustive litigation against Atlas that is necessary to obtain a reduction of the amounts they claimed owed. The Liquidation Analysis takes into account a secured claim by Atlas

---

[7] Debtor estimates a ten percent (10%) discount to estimated market values for liquidation.

of $516,946.13, that is applied against the Property and any remainder against the Insurance Proceeds, and an Administrative Claim of $210,113.11. Lane and Nachs claims of $33,592.14 is applied against the Insurance Proceeds as well.

| Asset | Market Value | Liquidation Value | Exemption | Secured Claim | Equity |
|---|---|---|---|---|---|
| 603 & 607 N. D Street, Eloy, AZ 85231 | $ 252,000.00 | $ 226,800.00 | $ - | $ 516,946.13 | $ (290,146.13) |
| Insurance Proceeds | $ 236,525.66 | $ 236,525.66 | $ - | $ 323,738.27 | $ (87,212.61) |
| | | | | Total Liquidated Value | -$87,212.61 |
| | | | | (Less Priority) | ($7,457.52) |
| | | | | (Less WLO Admin) | ($50,000.00) |
| | | | | (Less Atlas Admin) | ($210,113.11) |
| | | | | (Less KM Admin) | ($41,891.49) |
| | | | | LIQUIDATION EQUITY | -$396,674.73 |

Creditors should note that on a liquidation basis, full market value for assets cannot be obtained. Further, there are costs associated with a liquidation of assets that must be paid out of any sale proceeds. This would lessen the recovery to creditors. It should be further noted that if Atlas were to prevail in full on its alleged valuation of the Property at $510,000.00, there would still be no Liquidation Equity for unsecured creditors. In short, the Property would need to be worth over $700,000.00 to for there to be any positive Liquidation Equity.

Moreover, the liquidation analysis does not contain an estimation of any tax liability that could be associated with the liquidation. This would further lessen the recovery to creditors. **After Administration Claims[8] and Priority Claims, there is zero ($0) Liquidation Equity for the benefit of general Unsecured Claims. DVSCC will pay**

---

[8] WLO estimates its' attorneys' fees will be approximately $50,000.00 and no potential Administrative Claim for Atlas is accounted for.

Case 2:20-bk-00570-BKM    Doc 232    Filed 04/14/21    Entered 04/14/21 19:18:45    Desc
Main Document      Page 38 of 50

**in full all of its Administrative Claims and Priority Claims out of its Excess Cash Flow and pay a pro-rata distribution to its general unsecured creditors in the total amount of $0.00**

This analysis is provided for informational purposes only, given that DVSCC's Plan does not contemplate a liquidation. The importance of the analysis is to illustrate that even if DVSCC's estate was liquidated, values would lessen significantly and creditors would not be paid quickly and general unsecured creditors would not receive a distribution at all. DVSCC's Plan not only calls for the commencement of immediate payments to creditors, it also enhances the ability to pay creditors in a greater amount more quickly. Unsecured creditors should be mindful that all administrative claims and priority claims are paid before any distribution to general unsecured claims.

## XVIII.        DVSCC'S INCOME PROJECTIONS

DVSCC has operated overall profitably while in bankruptcy, to a large extent due to the extensive efforts of its principal and the patience of its creditors. DVSCC will continue to generate sufficient revenues to service its operating expenses and to pay the debt service called for under the Plan. DVSCC believes it can generate an income of $1,700 per month to fund Plan payments. Attached hereto as "**Exhibit F**" are DVSCC's projections provided on a monthly basis. As those projections demonstrate, DVSCC will be able to continue to operate profitably, and will generate sufficient income to be able to service the debt as is necessary under the Plan.

## XIX.  EFFECT OF CONFIRMATION

Except as otherwise provided in the Plan or the Court's order confirming the Plan,

the Confirmation Order acts as a discharge, effective as of the Effective Date, of any and all debts of DVSCC that arose at any time before the entry of the Confirmation Order, including but not limited to, all principal and any and all interest accrued thereon, pursuant to §1141(d)(l) of the Bankruptcy Code. The discharge of DVSCC shall be effective as to each claim regardless of whether a proof of claim thereof was filed, whether the claim is an allowed claim, or whether the holder thereof votes to accept the Plan.

In addition, any pre-confirmation obligations of DVSCC dealt with in the Plan shall be considered New Obligations of DVSCC and these New Obligations shall not be considered in default unless and until the Reorganized Debtor defaults on the New Obligations pursuant to the terms of the Plan. The New Obligations provided for in the Plan shall be in the place of, and completely substitute for, any pre-Confirmation obligations of DVSCC and, once the Plan is confirmed, the only obligations of DVSCC shall be such New Obligations as provided for under the Plan.

## XX.  IMPLEMENTATION AND FUNDING OF THE DEBTOR'S PLAN

DVSCC's plan will be funded by its operations and Excess Cash Flow. Further, the Interest Holders will repurchase their ownership in DVSCC by borrowing $20,000.00 and contributing those funds to DVSCC for its use to pay administrative claims. The Reorganized Debtors shall act as the Disbursing Agent under the Plan.

In the event any entity which possesses an Allowed Secured Claim, or any other lien in any of the Debtor's property for which the Plan requires the execution of any documents to incorporate the terms of the Plan, fails to provide a release of its lien or execute the necessary documents to satisfy the requirements of the Plan, the Debtor may

-40-

record a copy of their Plan and the Confirmation Order with the appropriate governmental agency and such recordation shall constitute the lien release and creation of the necessary new liens to satisfy the terms of the Plan. If the Debtor deems advisable, they may obtain a further Order from the Court that may be recorded in order to implement the terms of the Plan.

## XXI.  TAX CONSEQUENCES

Pursuant to §1125(a)(1) of the Bankruptcy Code, the Debtor is to provide a discussion of the potential material federal tax consequences of the Plan to the Debtor, any successor to the Debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the Plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether the Disclosure Statement provides adequate information, the Court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

Neither the Debtor nor their lawyers can make any statements with regard to the tax consequences of the Plan on any of the creditors. Although they would note that to the extent the creditor is not paid in full their Allowed Claim, they should consult with their tax advisor concerning the possibility of writing off for tax purposes that portion of their Allowed Claim that is not paid. Each creditor in this case, when analyzing the Plan, should consult with its own professional advisors to determine whether or not acceptance of the Plan by the creditor will result in any adverse tax consequences to the creditor.

-41-

The Bankruptcy Tax Act generally provides that the Debtor does not have to recognize income from the discharge of indebtedness. The Plan contemplates significant discharge of indebtedness; however, because the Debtor is in bankruptcy, they will not have to recognize the discharge of indebtedness as income for tax purposes. The Debtor does not believe the Plan will cause any adverse tax consequences.

## XXII. NON-ALLOWANCE OF PENALTIES AND FINES

No distribution shall be made under this Plan on account of, and no allowed claim, whether secured, unsecured, priority, or administrative, shall include any fine, penalty, exemplary or punitive damages, late charges or other monetary charge relating to or arising from any default or breach by the Debtor, and any claim on account thereof shall be deemed disallowed whether or not an objection to it is filed.

## XXIII. EXECUTORY CONTRACTS

The Debtor rejects all executory contracts and unexpired leases not otherwise assumed herein or by separate order of the Court. Claims for any executory contracts or unexpired leases rejected by the Debtor shall be filed no later than ten (10) days after the earlier of Confirmation or the date the executory contract or unexpired lease is specifically rejected. Any such Claims not timely filed and served shall be disallowed.

## XXIV. VOTING PROCEDURE

The Plan divides the claims of creditors and of interest-holders into separate classes. All classes of claimants are encouraged to vote; however, only the vote of holders of claims that are impaired by the Plan will have a significant impact upon the confirmation process. Generally, this includes creditors who, under the Plan, will receive less than payment in

Case 2:20-bk-00570-BKM   Doc 232   Filed 04/14/21   Entered 04/14/21 19:18:45   Desc
Main Document    Page 42 of 50

full of their claims on the Effective Date of the Plan.

All creditors entitled to vote on the Plan must cast their vote by completing, dating and signing the ballot which has been mailed to them together with the Disclosure Statement. The ballot contains instructions concerning the deadline for submitting the ballot and to what address the ballot should be mailed.

This Disclosure Statement has been approved by the Bankruptcy Court in accordance with §1125 of the Bankruptcy Code, and is provided to each person whose claim or interest has been scheduled by the Debtor, or who has filed a proof of claim or interest with respect to the Debtor or its property, each known equity interest holder and other parties-in-interest known to the Debtor. The Disclosure Statement is intended to assist creditors in evaluating the Plan and in determining whether to accept the Plan. In determining acceptance of the Plan, votes of creditors will only be counted if submitted by a creditor whose claim is duly scheduled by the Debtor as undisputed, non-contingent and liquidated, or who has timely filed with the Court a proof of claim or proof of interest.

The Bankruptcy Court will schedule a hearing to determine whether the requirements for confirmation under the Bankruptcy Code have been met and whether the Plan has been accepted by each impaired class and by the requisite number of creditors in such class. Under §1126 of the Code, an impaired class is deemed to have accepted the Plan upon a favorable vote of at least two-thirds (2/3) in dollar amount and more than one-half (l/2) in number of the allowed claims of class members voting on the Plan. Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also

determine that class members will receive at least as much as they would if the Debtors were liquidated under Chapter 7 of the Code.

Even if each class of creditors does not accept the Plan, the Plan can be confirmed under §1129(b) of the Code, so long as one impaired class of creditors accepts the Plan. The failure of each class to accept the Plan could very well result in a conversion of this case to a Chapter 7 or dismissal of the Chapter 11, and the secured creditors repossessing their collateral and disposing of it in a commercially reasonable manner with no obligation to unsecured creditors.

## XXV. __MODIFICATION OF PLAN__

In addition to its modification rights under §1127 of the Bankruptcy Code, the Debtors may amend or modify their Plan at any time prior to Confirmation without leave of the Court. The Debtor or the Reorganized Debtor may propose amendments and/or modifications of their Plan at any time subsequent to Confirmation with leave of the Court and upon notice to Creditors. After Confirmation of the Plan, the Debtor or the Reorganized Debtor may, with approval of the Court, as long as it does not materially or adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies of the Plan, or in the Confirmation Order, if any may be necessary to carry out the purposes and intent of their Plan.

## XXVI. __EXCULPATION CLAUSE__

From and after the Effective Date, neither Debtor, Reorganized Debtor, the professionals employed on behalf of the Estate, nor any of his respective present or former employees, advisors, attorneys, or agents, shall have or incur any liability, including

derivative claims, but excluding direct claims, to any holder of a Claim or any party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of (from the Petition Date forward), the Chapter 11 Case, Reorganized Debtor, the pursuit of confirmation of this Plan, or the consummation of this Plan, except for gross negligence and willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to his duties and responsibilities under this Plan or in the context of the Chapter 11 Case

## XXVII. <u>CLOSING OF THE CASE</u>

If the Court does not close this case on its own motion, the Reorganized Debtor will move the Court to close this case once the Plan is deemed substantially consummated. Until substantial consummation, the Reorganized Debtor will be responsible for filing pre- and post-confirmation reports required by the United States Trustee and paying the quarterly post-confirmation fees of the United States Trustee, in cash, pursuant to 28 U.S.C. §1930, as amended. Pursuant to 11 U.S.C. §1129(a)(12), all fees payable under section 1930 of title 28, as determined by the Court at the hearing on confirmation of the Plan, will be paid, in cash, on the Effective Date.

## XXVIII. <u>RETENTION OF JURISDICTION</u>

The Court will retain jurisdiction until the Plan has been fully consummated for, including but not limited to, the following purposes:

1.     The classification of the Claims of any Creditors and the re-examination of any Claims which have been allowed for the purposes of voting, and for the determination

Case 2:20-bk-00570-BKM    Doc 232    Filed 04/14/21    Entered 04/14/21 19:18:45    Desc
Main Document    Page 45 of 50

of such objections as may be filed to the Creditor's Claims. The failure by the Debtor to object to or examine any Claim for the purpose of voting shall not be deemed to be a waiver of the Debtor's rights to object to or to re-examine the Claim in whole or in part.

2. To determine any Claims which are disputed by the Debtor, whether such objections are filed before or after Confirmation, to estimate any Un-liquidated or Contingent Claims pursuant to 11 U.S.C. §502(c)(1) upon request of the Debtor or any holder of a Contingent or Un-liquidated Claim, and to make determination on any objection to such Claim.

3. To determine all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes or conflicts, whether or not subject to action pending as of the date of Confirmation, between the Debtors and any other party, including but not limited to, the sale or disposition of property (both pre and post confirmation) and any rights of the Debtors to recover assets pursuant to the provisions of the Bankruptcy Code.

4. The correction of any defect, the curing of any omission or any reconciliation of any inconsistencies in the Plan, or the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan.

5. The modification of the Plan after Confirmation, pursuant to the Bankruptcy Rules and the Bankruptcy Code.

6. To enforce and interpret the terms and conditions of the Plan.

7. The entry of an order, including injunctions, necessary to enforce the title, rights and powers of the Debtors, and to impose such limitations, restrictions, terms and

Case 2:20-bk-00570-BKM    Doc 232    Filed 04/14/21    Entered 04/14/21 19:18:45    Desc
Main Document    Page 46 of 50

conditions of such title, right and power that this Court may deem necessary.

        8.    The entry of an order concluding and terminating this case.

## XXIX.    <u>DISCLAIMER</u>

Court approval of this Disclosure Statement and the accompanying Plan of Reorganization, including exhibits, is not a certification of the accuracy of the contents thereof. Furthermore, Court approval of these documents does not constitute the Court's opinion as to whether the Plan should be approved or disapproved.

## XXX.  <u>RISKS</u>

The risk of the Plan lies essentially with the Debtor's ability to maintain their income to make plan payments.

## XXXI. <u>PROPONENTS' RECOMMENDATION/ALTERNATIVES TO THE PLAN</u>

The Debtor recommends that all creditors entitled to vote for the Plan do so. The alternatives to confirmation of the Plan would be either conversion of this case to a case under Chapter 7 of the Bankruptcy Code or its dismissal.

Conversion will result in the appointment of a Chapter 7 trustee and, most likely, the hiring of an attorney by the trustee. Expenses incurred in administering the Chapter 7 case will take priority in the right to payment over allowed, administrative expenses incurred in the Chapter 11 case. Both Chapter 7 and Chapter 11 administrative expenses take priority over the payment of unsecured claims without priority. In other words, conversion would likely decrease the net amount available to pay currently existing creditors, and it is extremely likely general unsecured creditors would not receive any

distribution in a Chapter 7. Further, a Chapter 7 proceeding would not provide the Debtor with the means to pay its Administrative Claims and Priority Claims over time.

In addition, conversion could substantially delay any distribution to creditors beyond the time period for distribution defined in the Plan. A Chapter 7 trustee is not limited to specific deadlines for closing a case and distributing assets to creditors. It is not unusual for distributions in Chapter 7 cases to be delayed for years. Moreover, the return on the assets of the Estate a trustee is likely to obtain through a standard Chapter 7 liquidation could be less than the return the Plan will generate.

Dismissal of this case would leave all creditors holding unsecured claims in the position of having to institute legal proceedings to collect their debts. Moreover, outside the context of a bankruptcy case, the first creditor to collect may collect all non-exempt property, leaving nothing to be paid to remaining creditors. In addition, dismissal of this case would open the door for the Debtor to file a new bankruptcy case, which could further delay or reduce funds available to pay creditors.

For all these reasons, the Debtor urges you to vote to accept the Plan and to return your ballots in time to be counted.

*[REMAINDER OF THIS PAGE INTENTIONALLY BLANK]*

*[SIGNATURES TO FOLLOW ON NEXT PAGE]*

**RESPECTFULLY SUBMITTED** this 14th day of April, 2021

**Wright Law Offices, PLC**

By: /s/ *Shawn A. McCabe (032402)*
    Shawn A. McCabe
    *Attorneys for Debtor*

DESERT VALLEY STEAM CARPET CLEANING, LLC

By: */s/ Jamie Granado (with permission)*
 By: Jamie Granado
 Its: Managing Member

**E-FILED** this 14th day of April, 2021 with the U.S. Bankruptcy Court. **COPIES** served via ECF notice, email, and U.S. Mail on the following parties:

Office of U.S. Trustee
230 North First Ave., Suite 204
Phoenix, AZ 85003-1706
Email: ustpregion14.px.ecf@usdoj.gov
Email: Patty.Chan@usdoj.gov

Cynthia L. Johnson
Law Offices of Cynthia L. Johnson
11640 East Caron Street
Scottsdale, AZ 85259
Cynthia@jsk-law.com
*Attorneys for Alfonso Larriva*

Christopher Dylla
Office of the Attorney General
2005 North Central Avenue
Phoenix, AZ 85004-1592
Christopher.dylla@azag.gov
*Attorneys for Arizona Department of Revenue*

Patrick R. Barrowclough
Atkinson, Hamill & Barrowclough, P.C.
3550 N. Central Avenue, Suite 1150
Phoenix, AZ 85012
pbarrowclough@ahblawfirm.com
*Attorneys for Atlas Residential, LLC*

Lane & Nach, P.C.
Attn: Adam B. Nach
2001 East Campbell A venue, Suite 103
Phoenix, AZ 85016
*Creditor*

1

2 Stanley J. Kartchner
c/o Lane & Nach, P.C.
3 Attn: Adam B. Nach
2001 East Campbell A venue, Suite 103
4 Phoenix, AZ 85016
*Chapter 7 Trustee*
5

6 All parties listed on the attached mailing list
who are not listed above.
7

8 By: */s/ Rebecca Casteel*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-50-