ORDERED ACCORDINGLY.

Dated: April 19, 2021



Brenda K. Martin, Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

**MINUTE ENTRY/ORDER**

**(Not for Publication)**

| | |
|---|---|
| Bankruptcy Judge: | Honorable Brenda K. Martin |
| Case Name: | Desert Valley Steam Carpet Cleaning LLC |
| Case No.: | 2:20-bk-00570-BKM |
| Subject of Matter: | Atlas Residential's Motion for Order that it was Acting as a Custodian RE Its Amended First and Second Application for Administrative Expense (docket no. 196) |

The parties are before the Court to address whether Atlas Residential ("Atlas") is a custodian for purposes of its Application for Administrative Expense.[1] The Court has reviewed the briefs, heard oral argument and is now ready to rule. In addition to arguing that it is a custodian under the Code, Atlas argues that judicial estoppel and the law of the case doctrine preclude the Debtor from arguing that Atlas is not a custodian. The Court will take these latter arguments up first.

**I.      JUDICIAL ESTOPPEL**

---

[1] On July 17, 2020, Atlas filed its Amended First and Second Application for Compensation and Reimbursement of Expenses of Custodian ("Application for Administrative Expense;" docket no. 115). On December 11, 2020, the Court directed briefing on the limited issue of whether Atlas was a custodian, which briefing occurred at dockets nos. 196, 205, 213 and 222. Oral argument was held April 8, 2021.

1

The doctrine of judicial estoppel "protects the integrity of the judicial process by precluding a party 'from gaining an advantage by asserting one position and then later seeking an advantage by taking a clearly inconsistent position.'" *In re Smith*, 526 B.R. 343, 347 (D. Ariz. 2015) (quoting *Hamilton v. State Farm Fire & Casualty*, 270 F.3d 778, 782 (9th Cir. 2001)). Both parties agree that the following factors are the appropriate standards to determine judicial estoppel:

> (1) whether a party's later position is "clearly inconsistent" with its earlier position;
> (2) whether the party has succeeded in persuading the court to accept that party's earlier position; and
> (3) whether the party would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Smith*, 526 B.R.at, 347 (citing *New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S. Ct. 1808, 149 L.Ed.2d 968 (2001)). "[J]udicial estoppel is an equitable doctrine invoked by a court at its discretion." *Ah Quin v. Cty. of Kauai Dep't of Transp.*, 733 F.3d 267, 270 (9th Cir. 2013) (citation omitted). The Supreme Court has stated that the factors are not "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel," and noted that "additional considerations may inform the doctrine's application in specific factual contexts." *New Hampshire* at 1815. Although the factors are guidelines, from the Supreme Court's perspective, the first factor must be present. In addition, "the Ninth Circuit 'has restricted the application of judicial estoppel to cases where the court relied on, or 'accepted,' the party's previous inconsistent position.'" *Copeland v. Techtronics Indus. Co.*, 95 F. Supp. 3d 1230, 1237 (S.D. Cal. 2015) (quoting *Hamilton* 270 F.3d at 783). Author Nicole C. Frazer, in her article *Reassessing the Doctrine of Judicial Estoppel: The Implications of the Judicial Integrity Rationale*, 101 Va. L. Rev. 1501, 1506 (2015), observed that the Ninth Circuit has tended to apply the factors rigidly as a three-part test. *Id.* at 1507. That is also this Court's observation. Accordingly, the Court will address each factor, as the parties have.

**(A)  Whether a party's later position is "clearly inconsistent" with its earlier position.**

The Debtor claiming that Atlas was not a custodian is clearly inconsistent with its earlier position. In its turnover motion, the Debtor moves for turnover specifically under § 543 and cites *In re Brickel*, 11 B.R. 353, 355 (Bankr. D. Me. 1981), for authority that, as a secured creditor, Atlas is a custodian. The Debtor's arguments for turnover at the hearing also focused on § 543, not § 542. Indeed, counsel specifically stated that the Debtor was not seeking relief under § 542: "As we laid out in our papers, we use the 543 test as opposed to the 542 test which is the more strenuous of the two, asserting that Atlas was a custodian." Hearing Tr. 5:9-11, April 7, 2020.

The Debtor is now urging the Court determine that Atlas is not a custodian. The Court finds and concludes the Debtor's current position is inconsistent with its prior position, thus satisfying the first factor for applying judicial estoppel.

**(B)  Whether the party has succeeded in persuading the court to accept that party's earlier position.**

The Debtor asked the Court to order turnover of estate assets under § 543. At oral argument, and in its motion papers the Debtor walked through the requirements for turnover under § 543 and the factors that might excuse turnover under § 543(d), arguing they did not apply. The Court did not make a finding that Atlas was a custodian, as it was not required to, given that the parties were in agreement on the subject. While the Court ultimately granted the Debtor's motion, it is overstating things to say the Debtor "persuaded" the Court to accept its position. The Court was not persuaded that Atlas was a custodian so much as it was persuaded that, regardless, Atlas had no defenses to turnover. Indeed, immediately following the ruling the parties discussed adequate protection and the Debtor's inability to use the assets without providing it, a discussion that would

not have taken place if Atlas was a mere custodian. However, it strikes the Court that this second factor is directed at situations where a party takes a position, is unsuccessful and then later takes the opposite position. Under such circumstance, estoppel clearly would not apply. Looking at it in that light, the Debtor did succeed, insofar as the Court granted its motion under § 543, so accordingly, the second factor is met.

**(C)     Whether the party would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.**

On this front, Atlas does little to describe the unfair advantage except to argue that, "allowing Debtor to take the exact opposite position grants Debtor an unfair advantage and deprives Atlas of its right to an administrative claim." *Atlas Residential's Motion for Order That It Was Acting As a Custodian*, 10:14-15/ It seems to the Court that this is not enough, and, if it were, it would make the third prong of analysis unnecessary. The focus of the turnover order was simply on turnover. Although the Debtor's counsel seemed to think the standards differed, the Court does not see any appreciable distinction between turnover under §§ 542, or 543, particularly given that, as a secured creditor, Atlas had the right to demand adequate protection regardless of the provision. The ruling of the Court would have been the same, under either turnover section: Atlas would have been required to turn over the property to the Debtor and provide an accounting. It does not appear that Atlas did anything in reliance on the ruling under § 543, other than to file a claim for an administrative expense, which just as easily could have been brought as part of its prepetition claim, assuming its loan documents provided for the expenses. The Court perceives of no unfair advantage to Atlas if the Court rules now on the custodian issue. Accordingly, the Court finds that judicial estoppel is not appropriate.

**II.     LAW OF THE CASE**

4

As to the law of the case doctrine, the parties do not dispute the legal standard, but instead argue over the application of the standard to the facts. The determination of the matter is a two-step process. First, a court must decide if the matter was "decided either expressly or by necessary implication in the previous disposition." *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993) (quotation removed). If it was not decided, it is not law of the case. If law of the case does apply, then a court has limited discretion to not apply it and can reopen the issue only if one of the following circumstances apply:

(1) the first decision was clearly erroneous;
(2) an intervening change in the law has occurred;
(3) the evidence on remand is substantially different;
(4) other changed circumstances exist;
(5) a manifest injustice would otherwise result.

*Id*. at 155. Some Ninth Circuit courts have combined the first and fifth factors together. *See Eichman v. Fotomat Corp.,* 880 F.2d 149, 157 (9th Cir. 1989) ("The law of the case controls unless the first decision is clearly erroneous and would result in manifest injustice, an intervening change in the law has occurred, or the evidence on remand is substantially different." (citation omitted)).

The Debtor argues that the Court did not explicitly determine that Atlas is a custodian, which is correct. As discussed, there was no need to do so, as the parties were in agreement. The Debtor also argues that the Court did not implicitly determine the issue, because the Debtor had also argued that under § 362, Atlas was required to turn over the assets. However, violating the stay is not itself a basis for turnover. Rather, turnover is based on either §§ 542 or 543. While the Court considered violation of the stay under § 362, it was only in the context of whether an exception to turnover existed under § 543(d). The order for turnover was clearly based on the only applicable section that was raised, § 543. Accordingly, the Court finds that the issue of whether

5

Atlas was a custodian was implicitly decided when the Court granted the Debtor's motion to compel turnover under § 543.

As the case law notes, the Court has discretion to ignore the law of the case doctrine in limited circumstances. Looking at the discretionary exceptions, only two could potentially apply, factors one and five. If the Court's ruling that implicitly held that Atlas was a custodian was "clearly erroneous" or a manifest injustice would result, the Court may decide not to apply the law of the case doctrine. If the ruling was clearly erroneous, the resulting claim for a large administrative expense that could thwart the reorganization, would be manifestly unjust. Accordingly, the Court will next consider whether its earlier ruling was clearly erroneous. That, of course, requires the Court to examine whether Atlas is, in fact, a custodian under 11 USC § 101(11)(C).

Atlas urges the Court may conclude it was not clearly erroneous by finding that the issue is not resolved in this jurisdiction and that reported case law supports both positions. The "clearly erroneous" standard is well known as a standard on appeal for reviewing a trial court's factual findings and applies if the appellate court is left with a "'definite and firm conviction that a mistake has been committed.'" *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1154 (C.D. Cal. 2015) (quoting *Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust for Southern California*, 508 U.S. 602, 622, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993)). It is less clear how one reviews a legal finding under this standard. In the one case the Court located that somewhat addressed this issue, the district court analyzed, under the law of the case doctrine, a decision made by another district court prior to a transfer of venue, and the court concluded it concurred with the first judge's decision. Accordingly, the first judge's

6

decision was not clearly erroneous and would constitute law of the case. *Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503 (C.D. Cal. 1992).

Here, of course, the issue the Court is being asked to review is one that was already before it. While the Court would not normally rethink an issue that it had already considered and decided, as noted, the Court did not explicitly decide the issue in the first instance. Accordingly, it will decline Atlas's offer to simply find that the issue is unsettled, and instead follow the lead of *Goodyear Tire*, and consider the parties arguments as to whether Atlas is a custodian.

**III.   IS ATLAS A CUSTODIAN?**

Whether Atlas is a custodian depends on whether it meets the definition of custodian under § 101(11). Under § 101(11), "custodian" means:

> (A) receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title;
> (B) assignee under a general assignment for the benefit of the debtor's creditors; or
> (C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors.

Obviously, Atlas does not fall under subsection (A) or (B); additionally, Atlas is not a trustee or a receiver. Therefore, the question for the Court is whether Atlas was an agent along with the other contingencies described in subsection (C). As to those contingencies, Atlas argues that under the loan documents, as well as pursuant to various court orders, it was authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property. There is no debate that the deed of trust and assignment of rents provide that Atlas has the right "to enter upon and take possession of the Property," "maintain" and "repair" the Property, "demand, collect, and receive rents" and "institute and carry on all legally proceedings necessary for the protection of the property." While the Debtor argues that such actions in taking over the Property were not

technically for the "purpose of enforcing a lien," it sites no authority for its narrow interpretation, and the Court finds that actions to protect and administer the Property are indeed actions to enforce Atlas's lien rights.

There is no binding authority on the Court as to the question as to whether a secured creditor in possession can be a custodian. Atlas cites three cases to the Court for the proposition that a secured creditor can be a custodian. *In re Hernandez*, 2016 WL 1055061 (Bankr. N.D. Ill. 2016), concludes without any analysis or citation to authority (aside from the Code section) that a mortgagee-in-possession is a custodian. *In re Brickel*, 11 B.R. 353, 355 (Bankr. D. Me. 1981), cites to *Matter of Williams*, 6 B.R. 789 (Bankr. E.D. Mich. 1980), which relies solely on a statement from 2 *Colliers on Bankruptcy*, 15th edition, para 101.10. The provision from *Colliers*, simply states that "a collecting agent under a security agreement may be considered an agent …" under the Code definition of custodian. Here, however, there was no "collecting agent." Indeed, the loan documents allow for the appointment by Atlas of an agent to manage the Property, but it elected not to do so. *In re Gunder,* 8 B.R. 390, 394 (Bankr. S.D. Ohio E.D. 1980), the last of the cases cited by Atlas, cites only to *In re Williams*. Accordingly, none are particularly helpful.

The Debtor, in turn, cites two cases in support of its position that Atlas is not a custodian. Neither analyzes whether a secured creditor can be an agent. Rather, they focus on the duties of the agent. In *In re Camdenton United Super, Inc*., 140 B.R. 523 (Bankr. W.D. Mo. 1992), the issue was whether an escrow agent holding funds for a small group of creditors was a custodian. The Court noted it was not, because "to be considered a custodian, an entity must be engaged in the general administration of the debtor's assets for the benefit of creditors." *Id.* at 525. Likewise, the *In re Meyer's, Inc*. court found that to qualify as a custodian, the party must be acting for the benefit of all creditors. *Id.* at 392 ("A creditor acting for his own benefit, is not within the ambit of the

8

intent of Congress in defining a custodian. Congress intended that definition to apply to a third party acting, not for the benefit of one creditor, but rather for the benefit of all creditors.") In each instance, the courts were reading the last clause of 101(C), "for the benefit of the debtor's creditors," as being modified by the phrase "agent… appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property."

Atlas counters this argument by noting it ignores the comma separating this phrase from the next phrase "or for the purpose of general administration." Citing *In re Ohakpo*, 494 B.R. 269, 278-281 (Bankr. E.D. Mich. 2013), which walks through the statutory construction of § 101(11)(C), Atlas argues that only parties taking charge for the purpose of general administration must do so "for the benefit of the debtor's creditors." The Court agrees with Atlas that the better reading of the statute is that an agent taking charge for the purposes of enforcing a lien is not modified by the clause 'for the benefit of creditors.' Accordingly, the Court does not interpret § 101(11)(C) to require a custodian act on behalf of all creditors. Thus, Atlas was authorized under a contract to take charge of property of the debtor for the purpose of enforcing a lien against such property.

This, however, does not resolve the issue as the Court still needs to establish whether Atlas was an agent. On this issue, the parties offer two differing views. The Debtor argues that agency is a narrow construct, that Arizona law requires "manifestation of consent by the alleged principal to the alleged agent that the agent shall act on his behalf and subject to his control and consent by the agent to act on behalf of the principal and subject to his control." *Response to Atlas's Motion for Order That They Were Acting* as a Custodian (citing *Dawson v. Withycombe*, 163 P.3d 1034, 1049, (Ariz. Ct. App. 2007), citing *State v. Superior Court, In and For Pima County*, 586 P.2d 1313, 1316 (Ariz. Ct. App. 1978)). Citing to The Restatement of Agency Second, § 1, the *State v.*

9

*Superior Court* court noted that "a person is not an agent for another unless the other had a right to control the transaction in question and to have it done for his benefit." *Id*. Thus, the Debtor argues, Atlas is not an agent under Arizona law because the basis of the deed of trust was not to create a principal-agent relationship and the Debtor had no control over Atlas, which is an essential element of an agency relationship.

Atlas does not dispute it is not a common law or "true" agent, but counters that under terms of the Loan Documents, it holds an irrevocable agency for security as described in the Restatement of Agency 2d, § 138. As such, it should be treated as an agent for purposes of § 101(11)(C). Atlas cites no case law in support of this argument, other than an Arizona state court case acknowledging that Arizona recognizes powers given for security. In considering Atlas's argument, a review of the Restatement and the Official Comments is useful.

As recognized by the courts in Arizona, The Restatement of Agency 3d, § 1.01, Agency Defined, provides:

> Agency is the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to act.

Official Comment b. to § 1.01, provides that the definition:

> …states the elements of the relationship widely referred to as 'common-law agency' or 'true agency.' The definition excludes cognate relationships in which, although the legal consequences of one person's actions are attributed to another person, one or more of the defining elements of agency are not present. See §§ 3.12-3.13, dealing with powers given as security ….Nonetheless, such cognate relationships are often grouped with relationship of common-law agency. More generally, legal usage varies. Some statutes and many cases use agency terminology when the underlying relationship falls outside the common-law definition.
> Moreover, the terminology of agency is widely used in commercial settings and academic literature to characterize relationships that are not necessarily encompassed by the legal definition of agency.

The Restatement of Agency 3d, § 3.12, Power Given as Security; Irrevocable Proxy, provides in pertinent part:

> (1) A power given as security is a power to affect the legal relations of its creator that is created in the form of a manifestation of actual authority and held for the benefit of the holder or a third person. This power is given to protect a legal or equitable title or to secure the performance of a duty apart from any duties owed the holder of the power by its creator that are incident to a relationship of agency under § 1.01. It is given upon the creation of the duty or title or for consideration. It is distinct from actual authority that the holder may exercise if the holder is an agent of the creator of the power.

Official Comments b. § 3.12, provides:

> b. Distinguished from agency and actual authority. A power given as security creates neither relationship of agency as defined in § 1.01 nor actual authority as defined in § 2.01, although the power enables its holder to affect the legal relations of the creator of the power. The power arises from a manifestation of assent by its creator that the holder of the power may properly create liability against the creator, or dispose of property or other interests of the creator, or perfect or otherwise protect a title already held by the holder of the power or the person for whose benefit the holder is to act. If the power is given as security for the performance of a duty, it must be supported by consideration, but consideration is not necessary if the power is given to facilitate transfers of title to the power holder. ***
>
> A power given as security does not create a relationship of agency as defined in § 1.01 because it is neither given for, nor exercised for, the benefit of the person who creates it. The holder is not subject to the creator's control and the holder does not owe fiduciary duties to the creator. An agent's right to act, created by actual authority, does not constitute a power given as security although the agent has an interest in earning a commission by performing services and the principal has contracted with the agent not to revoke the agent's actual authority. An agent's interest in being paid a commission is an ordinary incident of agency and its presence does not convert the agent's authority into a power held for the agent's benefit. … However, if a power holder has a distinct interest in the subject matter of an agency relationship, <u>separate from acting as an agent</u>, a power given to protect that interest is a power given as security, as is a power given to protect a distinct relationship, separate from the agency relationship, between the agent and the principal. A power may be granted irrevocably for the benefit of its creator as well as the holder. [Emphasis added.]

Atlas argues that these provisions support its argument that a power for security is a type of agency. However, the Court reads the above to describe a relationship distinct from an agency

11

relationship, and indeed, Atlas has not cited any cases where a power given as security has formed the basis for finding a custodial relationship. Rather, the cases cited by Atlas discussing powers given for security focus on whether a power given for security may be withdrawn by the grantor. The lack of any case authority discussing a creditor in possession as an agent/custodian is particularly concerning given that the contract provisions that allow Atlas to take possession and collect rents are standard provisions in loan documentation. Atlas notes that the loan documents permit it to "act exclusively and solely in the place of and stead of Grantor" and give it "all the powers of Grantor for the purposes stated…." But these provisions simply mean that Atlas had authority to act in the place of the Debtor, not that it could act on behalf of, or for the benefit of, the Debtor as its agent.

Indeed, courts discussing the definition of 'agent' under § 101(11)(C) have focused on true agency. By way of example, the Second Circuit in *United States v. Whiting Pools, Inc.*, 674 F.2d 144, 148–49 (2d Cir. 1982), *aff'd*, 103 S. Ct. 2309 (1983), followed the Restatement when it interpreted 'agent' under §101(11)(C) as: "'the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'" (quoting The Restatement of Agency 2d, § 1 (1958)).

At least two reported decisions have concluded that the term custodian contemplates a third party acting under mandatory duties arising from court appointment or contract, and not a creditor acting under permissive authority under a security agreement. *See In re Lewis*, 12 B.R. 106 (Bankr. M.D. Ga. 1981); and *Matter of Pride Foods*, *Inc.*, 22 B.R. 356 (Bankr. D. Neb. 1982). In reaching this conclusion, the court in *Lewis* started with the legislative history applicable to 11 U.S.C. § 101(11) which states, in pertinent part:

12

> Paragraph ([11]) defines 'custodian.' There is no similar definition in current law. It is defined to facilitate drafting, and means prepetition liquidator of the debtor's property, such as an assignee for the benefit of creditors, a receiver of the debtor's property, or a liquidator or administrator of the debtor's property. The definition of custodian to include a receiver or trustee is descriptive, and not meant to be limited to court officers with those titles. The definition is intended to include other officers of the court if their functions are substantially similar to those of a receiver or trustee.

*Id.* at 108 (quoting H.R.Rep.No.595, 95th Cong., 1st Sess., p. 310 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 6267).

As the *Lewis* court reflected, "[t]he tenor of the above is that Congress intended a third party to be a 'custodian,' and that this custodian would be for the benefit of the creditors and not for a creditor lawfully in possession of property solely for its own benefit." *Id.* at 109; *accord*, *Pride Foods*, 22 B.R. at 88) ("Section 543(b) seems to address a third party having custody of property for the benefit of a debtor's creditors, whether one or more.") As the court in *Lewis* went on to note, if the term custodian is "not strictly and narrowly construed … there would be little reason from [sic] excluding a custodian from § 542 …and little reason for § 543…." *Lewis* at 109; s*ee, also*, Thomas E. Plank*, The Creditor in Possession Under the Bankruptcy Code: History, Text, and Policy*, 59 Md. L. Rev. 253, 327 (2000) ("If Congress had intended to include a creditor in possession as a custodian under the Code, the history of the Bankruptcy Act suggests that it would have done so more explicitly.")

Along these same line, § 543(d) contemplates excusing turnover when the "interest of creditors … would be better served by permitting a custodian to continue in possession, custody, or control." If the custodian were a secured creditor with no fiduciary duty, it would rarely, if ever, be in the interest of creditors to allow it to remain in possession. Indeed, when this Court ruled on turnover, it expressed concern about leaving an estate asset in the hands of a party who was not a

fiduciary. In contrast, when turnover is requested under § 542, the only defense to turnover is lack of adequate protection of the secured creditor's interest.

IV. **CONCLUSION**

All of this leads this Court to conclude that the term 'agent,' as referred to in the definition of custodian, refers to a true agent under The Restatement. As Atlas concedes that a true agency did not exist here, Atlas is not a custodian under §§ 101 or 543. Accordingly, it follows that the Court's earlier ruling implying that Atlas was a custodian was erroneous. The Court also finds that, because the ruling was erroneous, it would be manifestly unjust to uphold the ruling as the law of the case. Accordingly, the Court will exercise its discretion to not apply the law of the case doctrine. In addition, because it finds that Atlas is not a custodian, Atlas's Application for Administrative Expense for custodial expenses is hereby denied.

Copies emailed this 19th day
of April 2021 to:

Patrick R. Barrowclough
ATKINSON, HAMILL & BARROWCLOUGH, P.C.
3550 N. Central Ave., #1150
Phoenix, AZ 85012
Email: pbarrowclough@ahblawfirm.com
Attorney for Atlas Residential

Shawn Aubrey McCabe
WRIGHT LAW OFFICES PLC
2999 N. 44th Street
Suite 600
Phoenix, AZ 85018
Email: shawn@azbklawyer.com
Attorney for Debtor Desert Valley Steam Carpet Cleaning LLC

Timothy M. Collier
THE LAW OFFICE OF TIMOTHY M. COLLIER, PLLC
3295 N. Drinkwater Blvd.
Suite 9
Scottsdale, AZ 85251
Email: timothy.collier@tmcollierlaw.com
Attorney for Jamie and Victor Granada

By: /s/Rachael M. Stapleton
     Judicial Assistant